703 So.2d 446 (1997)
ADVISORY OPINION TO THE ATTORNEY GENERAL RE REQUIREMENT FOR ADEQUATE PUBLIC EDUCATION FUNDING.
No. 89962.
Supreme Court of Florida.
November 20, 1997.
*447 Robert A. Butterworth, Attorney General and Louis F. Hubener, III, Assistant Attorney General, Tallahassee, for Petitioner.
Jon Mills and Timothy E. McLendon, Gainesville, and William L. Sundberg of Rumberger, Kirk & Caldwell, Tallahassee, on Behalf of Coalition to Reclaim Education's Share; and Pamela L. Cooper, Tallahassee, on Behalf of Florida School Boards Association, Inc., Florida Association of School Administrators, Florida Association of District School Superintendents, School Board of Baker County, School Board of Escambia County, School Board of Flagler County, School Board of Hillsborough County, School Board of Hernando County, School Board of Orange County, School Board of Osceola County, School Board of Palm Beach County, Pasco County Association of School Administrators, School Board of Pinellas County, School Board of Santa Rosa County, Palm Beach District Administrators Association, Terrell SessumsFormer Chairman, Florida Chamber of Commerce and former Speaker of the Florida House of Representatives, Robert McKnightFormer Executive Vice President, Florida Chamber of Commerce and former State Senator Willis Holcombe President of Broward Community College, and Dr. Joseph Allison, M.D., FAAP Chairman of the Dade County School Health Medical Advisory Committee, in support of the initiative petition.
Barry Richard of Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, Tallahassee, on Behalf of the Citizens for Budget Fairness, in opposition to the initiative petition.
PER CURIAM.
In accordance with article IV, section 10, Florida Constitution, and section 16.061, Florida Statutes (1995), the Attorney General has petitioned this Court for an advisory opinion on the validity of an initiative petition. In response, we issued an order permitting interested parties to file briefs, and we heard oral argument on the validity of the proposed amendment. We have jurisdiction pursuant to article V, section 3(b)(10) of the Florida Constitution.
The full text of the proposed amendment states:
1) The Constitution currently provides in Article IX, Section 1, for adequate provision to be made by law for public education. Adequate provision for funding public education shall be defined, in each fiscal year, as the required appropriation of at least a minimum percentage of total appropriations under Article III, not including lottery proceeds or federal funds. That minimum percentage (40%) is based upon the percentage appropriated for education by the Legislature for fiscal year 1986-87, prior to the appropriation of funds from Florida lotteries proceeds.
2) Article IX, Section 1 is amended by inserting "(a)" immediately before the current text, and adding a new subsection (b) at the end thereof, reading:
"(b) Adequate provision for funding public education shall be required in each fiscal year, and is defined as the appropriation of at least a minimum percentage (40%) for public education from the total appropriations under Article III in each fiscal year, not including lottery proceeds or federal funds. That minimum percentage (40%) is based upon the percentage appropriated for public education from total appropriations in fiscal year 1986-87, not including federal funds and prior to the appropriation of funds from Florida lotteries proceeds.
(1) The Legislature may suspend the applicability of this subsection for any one fiscal year, or a portion of one fiscal year, by passage of a separate bill that contains no other subject in which the legislature finds a compelling public necessity to suspend this subsection. Passage of that bill shall require a vote of approval of two thirds of the membership of each house.

*448 (2) Upon approval by the electors, this subsection shall take effect immediately following three full fiscal years."
3) If any portion or application of this measure is held invalid for any reason, the remaining portion or application, to the fullest extent possible, shall be severed from the void portion and given the fullest possible force and application.
The ballot title for the proposed amendment is "Requirement for Adequate Public Education Funding." The summary for the proposed amendment is:
Adequate provision for funding public education each fiscal year requires appropriation of at least a minimum percentage of total appropriations under Article III, not including lottery or federal funds.
That minimum percentage (40%) is based upon education's percentage of appropriations, excluding federal funds, for 1986-87 before state lotteries began.
May be suspended in any fiscal year by a bill adopted by 2/3 vote of each legislative house. Effective following third fiscal year after approval.
Our advisory opinion is limited to determining whether the proposed amendment complies with article XI, section 3 of the Florida Constitution and section 101.161, Florida Statutes (1995). Article XI, section 3 requires that a proposed amendment "shall embrace but one subject and matter directly connected therewith." If the proposed amendment is determined to be in compliance with this constitutional requirement, we review the ballot title and summary for compliance with section 101.161, Florida Statutes (1995).
The Attorney General writes that he has concluded "the proposed amendment does not appear violative of the single subject requirement." However, we do not agree because we find that the proposed amendment addresses more than one subject in that it affects separate, distinct functions of the existing government structure of Florida. Evans v. Firestone, 457 So.2d 1351, 1354 (Fla.1984); Advisory Op. to Att'y Gen. re People's Property Rights, 699 So.2d 1304 (Fla.1997).
We have clearly stated that to ascertain whether a proposed amendment meets the single-subject requirement, we must decide whether the proposal affects separate functions of government and how the proposal affects other provisions of the Constitution. The proponents of this amendment argue that the proposal asks a single and easily understood question: Should the State fund education at a minimum of forty percent of appropriations? They contend that by defining "adequate provision for funding public education" as a required appropriation of at least a minimum percentage of forty percent for public education from the total legislative appropriations under article III in each fiscal year, not including lottery proceeds or federal funds, the amendment affects only the legislative branch of government. They contend that the proposal has no impact beyond the setting of a parameter within which the legislature must operate. The proponents also rely upon our holdings in Advisory Opinion to the Attorney GeneralLimited Political Terms In Certain Elective Offices, 592 So.2d 225, 227 (Fla.1991); Advisory Opinion to the Attorney General re Limited Casinos, 644 So.2d 71, 74 (Fla.1994); and In re Advisory Opinion to the Attorney GeneralSave Our Everglades, 636 So.2d 1336, 1340 (Fla.1994), in which we stated that a proposed amendment may affect multiple branches of government so long as it does not substantially alter or perform the function of these branches. They contend that any impact this proposed amendment would have upon other government programs is merely hypothetical, Limited Casinos at 74, and that such impact, if it did occur, would not substantially alter or perform the functions of other branches of government.
Proponents rely upon our decisions upholding proposed amendments in Advisory Opinion to the Attorney General re Funding for Criminal Justice, 639 So.2d 972, 974 (Fla. 1994); Advisory Opinion to the Attorney GeneralFee On Everglades Sugar Production; Advisory Opinion to the Attorney GeneralEverglades Trust Fund; Advisory Opinion to the Attorney GeneralCosts of Water Pollution Abatement, 681 So.2d 1124, 1132 (Fla.1996), and note that in those decisions *449 we upheld amendments in which legislative discretion as to appropriations was limited. In Funding for Criminal Justice, the proposed amendment: (1) mandated the raising of taxes; (2) established a trust fund; (3) required that funds be spent in excess of current levels; and (4) set forth the particular purposes for which the funds raised could be spent. In Everglades Sugar Production, the proposed amendment imposed a fee on sugar and designated the general purpose for which funds raised through that fee should be expended.
In response, the opponents of the proposed amendment point out that we have emphasized that "enfolding disparate subjects within the cloak of a broad generality does not satisfy the single subject requirement." Evans v. Firestone, 457 So.2d at 1353 (citing Fine v. Firestone, 448 So.2d 984 (Fla.1984)); see also Advisory Op. to the Att'y Gen. Restricts Laws Related to Discrimination, 632 So.2d 1018, 1020 (Fla.1994). The opponents argue that the proposed amendment runs afoul of this rule because setting a minimum percentage of forty percent of appropriations for education arbitrarily relegates the percentage of appropriations for all other functions of government to the remaining sixty percent of appropriations and thereby substantially affects all of those other functions. We agree.
It is obvious that this amendment would substantially alter the legislature's present discretion in making value choices as to appropriations among the various vital functions of State government, including not only education but also civil and criminal justice; public health, safety, and welfare; transportation; disaster relief; agricultural and environmental regulation; and the remaining array of State governmental services. In answer to a question at oral argument, the proponents acknowledged that if, for example, the gasoline tax was increased with the intent to have one hundred percent of that increased tax revenue utilized for roads, that would not be possible because forty percent of the increase in revenue would have to be used for schools unless forty percent was obtained from other existing revenue sources.
Although the legislature performs the appropriations function, this function also directly affects agencies of the executive branch that depend upon legislative appropriations, as well as local governments and special districts which likewise depend upon appropriations. To arbitrarily limit agencies, local governments, and special districts to sixty percent of the State's appropriations would substantially alter the operation of the various requirements for finance and taxation in article VII in respect to bonded indebtedness and State mandates to local governments, thereby affecting the functioning of all State agencies, local governments, and special districts.
Moreover, although the legislature has the power of appropriation under the Florida Constitution, the Governor also has a significant function in respect to appropriation pursuant to article III, section 8, setting forth the functions of executive approval and veto. In article III, section 8, the Governor is provided with a line-item veto as to appropriations:
The governor may veto any specific appropriation in a general appropriation bill, but may not veto any qualification or restriction without also vetoing the appropriation to which it relates.
Under this proposed amendment, this function of the Governor would be limited because the Governor would be unable to veto any specific appropriation within the forty-percent educational appropriation if the veto would reduce the education appropriation to less than the required forty percent. The proposed amendment also would affect the function of the Governor and Cabinet pursuant to article IV, section 13 of the Florida Constitution,[1] as to reducing the State budget in compliance with the provisions of article *450 VII, section 1(d) of the Florida Constitution,[2] in the event of a revenue shortfall.
We distinguish Funding for Criminal Justice on the basis that the amendment it addressed contained a specific tax designed to produce revenue for which the amendment would allocate uses. Likewise, Everglades Sugar Production contained a specific fee, the use of which the amendment would restrict. These directed allocations of specific taxes and fees differ significantly from the setting of a percentage of all State appropriations for a particular use.
In sum, we conclude that the proposed amendment does substantially affect more than one function of government and multiple provisions of the Constitution. The amendment fails to comply with the single-subject requirement and, therefore, must be stricken from the ballot.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, HARDING and WELLS, JJ., and GRIMES, Senior Justice, concur.
ANSTEAD, J., dissents with an opinion.
ANSTEAD, Judge, dissenting.
In our recent decision in Coalition for Adequacy and Fairness in School Funding, Inc. v. Chiles, 680 So.2d 400 (Fla.1996), we struggled to give meaning to the provision in our constitution mandating that the legislature make "adequate provision" for a statewide uniform system of free public schools. It is apparent that we would have been greatly aided if there had been an express statement in the constitution defining "adequate provision" to guide us. On its face, it appears to me that the proposed amendment now before us, subject perhaps to a fair debate as to its rationality and fiscal consequences to state government, provides that express definition of "adequate", and, hence, satisfies the single subject requirement.
In its analysis of the effect of the proposed amendment the majority has constructed a compelling case for concluding that the amendment would have a radical effect on funding of state government. After all, money makes the world go round, and restricting its use or availability can have devastating consequences. Indeed, the opinion makes out a good case for concluding that adoption of the amendment may constitute questionable policy. The question is, however, whether our limited role permits us to consider that fact in determining whether the proposed amendment itself embraces "but one subject and matter directly connected therewith" as provided in article XI, section 3 of our constitution. It appears to me that our limited role does not permit such a broad analysis, and that we have gone astray in shifting our focus to the limitless effects that any revenue limiting provision would have on state government.
In recent years there has been a tremendous increase in the use of the initiative process to amend the constitution. With that increase, this Court has struggled mightily and conscientiously to define and apply the single-subject limitation test to a wide variety of ballot initiatives having enormous consequences to our citizens and their quality of life. The most difficult problem in virtually every instance is evaluating amendments that may appear to embrace but one subject, but that in effect have far reaching consequences and affect numerous other provisions and subjects covered by the constitution. This latter concern is often difficult to set aside in resolving the single-subject issue. In addition, there exists the question of whether the intense scrutiny that an important and complex issue demands, such as that reflected in part in the majority opinion, can be achieved in a popular election by a voting public already overwhelmed by numerous candidates and issues. Perhaps the current Constitutional Revision Commission will consider these concerns and come up with a better way for the initiative process to function.
NOTES
[1] Article IV, section 13 of the Florida Constitution provides in relevant part:

In the event of revenue shortfalls, as defined by general law, the governor and cabinet may establish all necessary reductions in the state budget in order to comply with the provisions of Article VII, Section 1(d).
[2] Article VII, section 1(d) of the Florida Constitution provides:

Provision shall be made by law for raising sufficient revenue to defray the expenses of the state for each fiscal period.