PER CURIAM.
The Attorney General has petitioned this Court for an advisory opinion as to the validity of a proposed citizen initiative amendment to the Florida Constitution, submitted by an organization called Floridians for 21st Century Travel Connections & Choices (proponents). We have jurisdiction. See art. IV, § 10, § 3(b)(10), Fla. Const.
The ballot title for the proposed amendment is “Florida Transportation Initiative for statewide high speed monorail, fixed guideway or magnetic levitation system.” The summary for the proposed amendment provides:
To reduce traffic and increase travel alternatives, this amendment provides for development of a high speed monorail, fixed guideway or magnetic levitation system linking Florida’s five largest urban areas and providing for access to existing air and ground transportation facilities and services by directing the state and/or state authorized private entity to implement the financing, acquisition of right-of-way, design, construction and operation of the system, with construction beginning by November 1, 2003.
The full text of the proposed amendment reads as follows:
BE IT ENACTED BY THE PEOPLE OF FLORIDA THAT:
Article X, Section 19, Florida Constitution, is hereby created to read as follows:
High Speed Ground Transportation System.
To reduce traffic congestion and provide alternatives to the traveling public, it is hereby declared to be in the public interest that a high speed ground transportation system consisting of a monorail, fixed guideway or magnetic levitation system, capable of speeds in excess of 120 miles per hour, be developed and operated in the State of Florida to provide high speed ground transportation by innovative, efficient and effective technologies consisting of dedicated rails or guideways separated from motor vehicular traffic that will link the five largest urban areas of the State as determined by the Legislature and provide for access to existing air and ground transportation facilities and services. The Legislature, the Cabinet and the Governor are hereby directed to proceed with the development of such a system by the State and/or by a private entity pursuant to state approval and authorization, including the acquisition of right-of-way, the financing of design and construction of the system, and the operation of the system, as provided by specific appropriation and by law, with construction to begin on or before November 1, 2003.
In determining the validity of initiative petitions, this Court’s inquiry is limited to two legal issues: whether the proposed amendment comports with the single-subject requirement of article XI, section 3 of Florida’s Constitution, and whether the ballot title and summary are clear and unambiguous pursuant to section 101.161(1), Florida Statutes (1999). See Advisory Opinion to the Attorney General re Right of Citizens to Choose Health Care Providers, 705 So.2d 563, 565 (Fla.1998). This Court’s review of a proposed amendment is strictly limited to these legal issues and does not include an evaluation of the merits or the wisdom of the proposed amendment. See Advisory Opinion to the Attorney General-Limited Political Terms in Certain Elective Offices, 592 So.2d 225, 227 (Fla.1991). Accordingly, we do not have the authority to evaluate *369 whether it is wise to pass a constitutional amendment that would mandate the expenditure of government funds for a particular purpose or even whether the subject matter of this proposed amendment should more appropriately be addressed by the Legislature.
Although it is our responsibility under the Constitution to determine whether a citizens’ initiative complies with the single-subject restriction and contains a proper title and ballot summary, we note that no party has filed a pleading or brief in opposition to this citizens’ initiative as has been done for so many of the other citizens’ initiatives we have reviewed. Although the Attorney General raises a concern as to whether there might be a single-subject violation, the Attorney General takes no position on whether the interference is “substantial enough to invoke the proscriptions of Article XI, section 3, Florida Constitution or whether the amendment only incidentally alters or performs the functions of the legislative or executive branches.” Letter from Robert A. Butterworth, Attorney General of the State of Florida, to The Honorable Major Harding, Chief Justice, and Justices of the Supreme Court of Florida (Mar. 14, 2000) (on file with Supreme Court of Florida).
Article XI, section 3, Florida Constitution, requires that a constitutional amendment proposed by an initiative petition “embrace but one subject and matter directly connected therewith.” To comply with the single-subject requirement, a proposed amendment must manifest a “logical and natural oneness of purpose.” Fine v. Firestone, 448 So.2d 984, 990 (Fla.1984). There are two primary reasons for this requirement. The first reason for this single-subject requirement is designed to prevent what is known as “logrolling,” which is a “practice whereby an amendment is proposed which contains unrelated provisions, some of which electors might wish to support, in order to get an otherwise disfavored provision passed.” See Advisory Opinion to the Attorney General re Limited Casinos, 644 So.2d 71, 73 (Fla.1994) (citing Advisory Opinion to the Attorney General—Limited Marine Net Fishing, 620 So.2d 997 (Fla.1993)); see also In re Advisory Opinion to the Attorney General—Save Our Everglades, 636 So.2d 1336, 1339 (Fla.1994). The only subject embraced in the proposed amendment is whether the people of this State want to include a provision in their Constitution mandating that the government build a high speed ground transportation system. Thus, there is no impermissible logrolling.
The second reason for the single-subject restriction is to prevent a single constitutional amendment from substantially altering or performing the functions of multiple aspects of government. See Advisory Opinion to the Attorney General—Save Our Everglades, 636 So.2d at 1340. Article XI, section 3 “protects against multiple ‘precipitous’ and ‘cataclysmic’ changes in the constitution by limiting to a single subject what may be included in any one amendment proposal.” Advisory Opinion to the Attorney General re Fish & Wildlife Conservation Comm’n, 705 So.2d 1351, 1353 (Fla.1998). The single-subject requirement is a “rule of restraint” that was “placed in the constitution by the people to allow the citizens, by initiative petition, to propose and vote on singular changes in the functions of our governmental structure.” Advisory Opinion to the Attorney General re Prohibiting Public Funding of Political Candidates’ Campaigns, 693 So.2d 972, 975 (Fla.1997) (quoting Fine, 448 So.2d at 988).
As the proponents of the amendment point out, the fact that an amendment affects multiple functions of government does not automatically invalidate a citizens’ initiative. See id. As we explained in detail in Limited Casinos:
We recognize that the petition, if passed, could affect multiple areas of government. In fact, we find it difficult to conceive of a constitutional amendment that would not affect other aspects of government to some extent. Howev *370 er, this Court has held that a proposed amendment can meet the single-subject requirement even though it affects multiple branches of government. Advisory Opinion to the Attorney General—Limited Political Terms in Certain Elective Offices, 592 So.2d 225, 227 (Fla.1991). Further, this Court has held that the possibility that an amendment might interact with other parts of the Florida Constitution is not sufficient reason to invalidate the proposed amendment. English—The Official Language of Florida, 520 So.2d at 12, 13. All of the scenarios raised by the opponents relating to possible impacts on other branches of government or on the constitution are premature speculation. In English — The Official Language of Florida we stated “[i]t may be that, if passed, the amendment could have broad ramifications. Yet, on its face it deals with only one subject.” Id. at 13. Likewise, we find that the Limited Casinos amendment meets the single-subject requirement.
Limited Casinos, 644 So.2d at 74.
Like the Limited Casinos amendment, this proposed amendment concerning a high-speed transportation system may have broad ramifications for this State, but it only deals with one subject and it does not substantially alter or perform multiple functions of government. Our opinion in Advisory Opinion to the Attorney General re Requirement for Adequate Public Education Funding, 703 So.2d 446 (Fla.1997), is clearly distinguishable. The proposed constitutional amendment in that case would have required that 40% of state appropriations, not including lottery proceeds or federal funds, be allocated to education. See id. at 447. The educational funding amendment violated the single-subject principle because its rigid funding percentage actually performed the appropriation function of the Legislature and removed entirely the Governor’s ability to veto any portion of that appropriation. See id. at 449-50. Thus, in finding that proposed amendment in violation of the single subject rule, we said:
The opponents argue that the proposed amendment runs afoul of this rule because setting a minimum percentage of forty percent of appropriations for education arbitrarily relegates the percentage of appropriations for all other functions of government to the remaining sixty percent of appropriations and thereby substantially affects all of those other functions. We agree.
[[Image here]]
... Under this proposed amendment, this function of the Governor would be limited because the Governor would be unable to veto any specific appropriation within the forty-percent educational appropriation if the veto would reduce the education appropriation to less than the required forty percent. The proposed amendment also would affect the function of the Governor and Cabinet pursuant to article IV, section 13 of the Florida Constitution, as to reducing the State budget in compliance with the provisions of article VII, section 1(d) of the Florida Constitution, in the event of a revenue shortfall.
We distinguish Funding for Criminal Justice on the basis that the amendment it addressed contained a specific tax designed to produce revenue for which the amendment would allocate uses. Likewise, Everglades Sugar Production contained a specific fee, the use of which the amendment would restrict. These directed allocations of specific taxes and fees differ significantly from the setting of a percentage of all State appropriations for a particular use.
Id. at 449-50 (footnotes omitted).
The proposed constitutional amendment now before us does not suffer from the same fatal flaws as did the educational funding amendment. Although the proposed amendment does not point to a specific tax or fee from which the revenues for the project would come, it also does not require the Legislature to spend a specific *371 percentage of the budget or even a specific amount on the development of this system. Additionally, assuming the amendment would place some restrictions or limits on the veto power regarding the budget for money to build the high speed ground rail system, we do not find this to be the type of “precipitous” or “cataclysmic” change prohibited by the single subject restriction. Such a restriction, unlike the adequate public funding amendment, would not in any event “substantially alter” the Governor’s powers or “perform multiple functions of government.” Indeed, it appears the branches of government are left with wide discretion in determining the details and funding of the project. Accordingly, we find that the proposed amendment does not violate the single-subject requirement.
We further find that the language of the title and ballot summary of the proposed amendment comports with section 101.161(1), Florida Statutes (1999). On this issue, the Attorney General questions only whether the term “statewide” as used in the petition may be misleading. As the proponents of this initiative point out, however, this term is not confusing because the essence of the proposed amendment is to require a ground transportation system that will link the five largest urban areas. These areas would encompass a major portion of the State, and thus are “statewide.” Therefore, the ballot title and summary provide an accurate description of the amendment.
Accordingly, there is no bar to placing the proposed amendment on the ballot.
It is so ordered.
WELLS, C.J., and SHAW, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.
HARDING, J., dissents with an opinion.