PER CURIAM.
The Attorney General has petitioned this Court for an advisory opinion as to the validity of a proposed citizen initiative amendment to the Florida Constitution. We have jurisdiction. See art. IV, § 10; art V, § 3(b)(10), Fla. Const. This Court issued an order permitting interested parties to file briefs on the proposed amendment.[1]
The ballot title and summary for the proposed amendment are as follows:
Ballot title: Voluntary Universal PreKindergarten Education
Ballot summary: Every four-year-old child in Florida shall be offered a high quality pre-kindergarten learning oppor *163 tunity by the state no later than the 2005 school year. This voluntary early childhood development and education program shall be established according to high quality standards and shall be free for all Florida four-year olds without taking away funds used for existing education, health and development programs.
The text of the proposed amendment, which would rename section 1 to section 1(a), and add sections 1(b) and 1(c) to article IX of the Florida Constitution, and the paragraphs outlining the reasons for the amendment state:
WHEREAS, infancy and early childhood development set the stage for a child’s future ability to interact socially and achieve academically, and extensive research on the human brain shows that from birth to age 5 children rapidly develop the language and cognitive capabilities and emotional, social, regulatory and moral capacities upon which child development proceeds. To this end, these critical dimensions must be nurtured in early, high quality, active learning pre-kindergarten programs for all Florida four-year-old children to provide both short and long-term benefits, including later school success.
WHEREAS, it is not advisable to mandate such pre-kindergarten programs for all children, but rather to require such programs to be available to all children who wish to participate therein, and thus to permit the parents, custodian, guardian or other caregiver to make the individual determination on behalf of each of Florida’s four-year-olds whether to participate therein.
WHEREAS, existing resources of public institutions are limited in their ability to support additional demand, and therefore a range of pre-kindergarten settings, including school sites, childcare facilities and homes, both public and non-public, should house pre-kindergar-ten programming, so that parents, custodians, guardians, or other caregivers may have choices among school settings, curricula, and services in order to preserve their role as the primary protector of the welfare of the children.
WHEREAS, current available knowledge accepts three primary essentials for school readiness: 1) that children are physically healthy, rested and well nourished; 2) that they are able to communicate needs, wants and thoughts verbally; 3) and that they are enthusiastic and curious in approaching new activities; accordingly, high quality pre-kin-dergarten programs should reflect an understanding of how children learn by providing appropriate preschool experiences in emphasizing basic skills including growth in language, literacy, math concepts, science arts, physical development and personal and social competence.
WHEREAS, current knowledge dictates that a high quality pre-kindergarten learning opportunity must operate according to standards that require a core curriculum and interactive, age appropriate, individualized programming delivered according to children’s unique scheduling needs and which promote and enhance children’s feelings of comfort and self-esteem, and further dictates the importance of appropriate staffing ratios, teacher qualifications and professional development, physical environment, and the protection of child health and safety, and therefore, it is necessary to operate the Florida early childhood development and education program according to professionally accepted standards.
WHEREAS, Florida currently has many fine education, development and *164 health care programs that seek to address the needs of children and adults but current resources do not meet the full demand of such programs, and therefore the early childhood education and development program described herein must be implemented in such a way as not to remove any funds from any existing education, development or health care program.
NOW THEREFORE, Article IX, Section 1 of the Florida Constitution is hereby amended to renumber Section 1 as Section 1(a) and to add the following Sections 1(b) and (c):
(b) Every four-year-old child in Florida shall be provided by the State a high quality pre-kindergarten learning opportunity in the form of an early childhood development and education program which shall be voluntary, high quality, free, and delivered according to professionally accepted standards. An early childhood development and education program means an organized program designed to address and enhance each child’s ability to make age appropriate progress in an appropriate range of settings in the development of language and cognitive capabilities and emotional, social, regulatory and moral capacities through education in basic skills and such other skills as the Legislature may determine to be appropriate.
(c) The early childhood education and development programs provided by reason of subparagraph (b) shall be implemented no later than the beginning of the 2005 school year through funds generated in addition to those used for existing education, health, and development programs. Existing education, health, and development programs are those funded by the State as of January 1, 2002 that provided for child or adult education, health care, or development.
In determining the validity of initiative petitions, this Court is limited to two issues: (1) whether the petition satisfies the single-subject requirement of article XI, section 3, of the Florida Constitution; and (2) whether the ballot title and summary are printed in clear and unambiguous language pursuant to section 101.161, Florida Statutes (2001). See Advisory Opinion to the Attorney Gen. re Florida’s Amend, to Reduce Class Size, 816 So.2d 580 (Fla.2002); Advisory Opinion to Attorney Gen. re Fla. Transp. Initiative for Statewide High Speed Monorail, Fixed Guideway or Magnetic Levitation Sys., 769 So.2d 367, 368 (Fla.2000). This Court does not review the merits of a proposed amendment. See, e.g., Advisory Opinion to the Attorney Gen. re Right of Citizens to Choose Health Care Providers, 705 So.2d 563, 565 (Fla.1998).

Single Subject Requirement

Article XI, section 3 of the Florida Constitution provides in pertinent part that proposed amendments based on citizen initiative petitions “shall embrace but one subject and matter directly connected therewith.” The single-subject requirement applies to the citizen initiative method of amending the constitution because
section 3 [citizen initiative] does not afford the same opportunity for public hearing and debate that accompanies the proposal and drafting processes of sections 1, 2, and 4. Accordingly, section 3 protects against multiple “precipitous” and “cataclysmic” changes in the constitution by limiting to a single subject what may be included in any one amendment proposal.
Advisory Op. to the Att’y Gen. re Fish & Wildlife Conservation Comm’n, 705 So.2d 1351, 1353 (Fla.1998).
*165 Two reasons exist for the single-subject requirement. The first reason is to prevent “logrolling,” a practice that combines separate issues into a single proposal to secure passage of an unpopular issue. See High Speed Monorail, 769 So.2d at 369. To comply with this single-subject requirement, a proposed amendment must manifest a “logical and natural oneness of purpose.” See Fine v. Firestone, 448 So.2d 984, 990 (Fla.1984). In this case the proposed amendment deals with a single subject-the creation of a high-quality pre-kindergarten education program for all Florida four-year-olds by 2005. The proposal does not “logroll” additional or unpopular issues into the amendment, but does manifest a “logical and natural oneness of purpose.” The fact that the proposed amendment requires the Legislature to fund the pre-kindergarten program does not constitute impermissible logrolling, but rather provides the details of how the amendment will be implemented. See Amendment to Reduce Class Size, 816 So.2d at 583.
The second purpose of the single-subject requirement is to prevent a constitutional amendment from substantially altering or performing the functions of multiple aspects of government, or from affecting other provisions of the constitution. See In re Advisory Opinion to the Atty. Gen. — Restricts Laws Related to Discrimination, 632 So.2d 1018, 1020 (Fla.1994). As we explained in High Speed Monorail:
Article XI, section 3 “protects against multiple ‘precipitous’ and ‘cataclysmic’ changes in the constitution by limiting to a single subject what may be included in one amendment proposal.” The single-subject requirement is a “rule of restraint” that was placed in the constitution by the people to allow the citizens, by initiative petition, to propose and vote on singular' changes in the functions of our governmental structure.
769 So.2d at 369. We have also observed that it is “difficult to conceive of a constitutional amendment that would not affect other aspects of the government to some extent.” Id. (quoting Advisory Opinion to the Atty. Gen. re Limited Casinos, 644 So.2d 71, 74 (Fla.1994)).
In this case the proposed amendment does not substantially alter or perform the functions of multiple aspects of government, and is similar to the amendments approved in High Speed Monorail and Amendment to Reduce Class Size. In those cases, the proposed amendments did not specify a certain percentage of the budget or a specific amount to be spent on the project contemplated by the proposed amendment. Likewise in this case, the proposal does not require the Legislature to spend a specific percentage of the budget or a specific amount on the development of the pre-kindergarten program. The only requirement as to funding is that it- must be “through funds generated in addition to those used for existing education, health, and development programs.” The proposed amendment defines existing “education, health, and development programs” as “those funded by the State as of January 1, 2002 that provide for child or adult education, health care, or development.” This is unlike the situation in Advisory Opinion to the Attorney General re Requirement for Adequate Public Education Funding, 703 So.2d 446, 450 (Fla.1997), where this Court struck down a proposed constitutional amendment requiring that forty percent of state appropriations, not including lottery proceeds, or federal funds, be allocated to education. The proposed amendment failed in Adequate Public Education Funding because “its rigid funding percentage actually performed the appropriation function of the Legislature and removed entirely the Governor’s abil *166 ity to veto' any portion of that appropriation.” High Speed Monorail, 769 So.2d at 370. The requirement on the source of funding in this case does not substantially alter or perform multiple functions of state government because it does not actually perform the appropriation function of the Legislature; it simply provides that funding must be in addition to current funding for existing education, health and development programs. Also, the proposal does not perform any judicial functions by adjudicating specific facts.[2]
Finally, as in Amendment to Reduce Class Size, it appears “the branches of government are left with wide discretion in determining the details of the project.” 816 So.2d at 584 (quoting High Speed Monorail, 769 So.2d at 370-71). For these reasons the proposed amendment does not create “precipitous” or “cataclysmic” changes in the functions of multiple branches of government as to render the proposed amendment clearly and conclusively defective. We conclude the proposed amendment complies with the single-subject requirement.

Ballot Title and Summary

Section 101.161(1) governs the requirements for ballot titles and summaries and provides in relevant part:
Whenever a constitutional amendment or other public measure is submitted to the vote of the people, the substance of such amendment ... shall be printed in clear and unambiguous language on the ballot .... [T]he substance of the amendment ... shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure. The ballot title shall consist of a caption, not exceeding 15 words in length, by which the measure is commonly referred to or spoken of.
§ 101.161(1), Fla. Stat. (2001). Section 101.161 requires the ballot title and summary “state in clear and unambiguous language the initiative’s primary purpose.” Advisory Opinion to the Attorney Gen. re People’s Property Rights Amendments Providing Compensation for Restricting Real Property Use May Cover Multiple Subjects, 699 So.2d 1304, 1307 (Fla.1997). Furthermore, the ballot title and summary must be accurate and informative. See Advisory Opinion to the Attorney Gen. re Term Limits Pledge, 718 So.2d 798, 803 (Fla.1998). The purpose of section 101.161 is “to provide fair notice of the content of the proposed amendment so that the voter will not be misled as to its purpose, and can cast an intelligent and informed ballot.” Id. Finally, the ballot title and summary may not be read in isolation, but must be read together in determining whether the ballot information properly informs the voters. See Advisory Opinion to the Attorney Gen. re Tax Limitation, 673 So.2d 864, 868 (Fla.1996).
The title of the initiative in this case is “Voluntary Universal Pre-Kinder-garten Education.” The ballot summary clearly and unambiguously sets forth the initiative’s primary purpose, stating every four-year-old child in Florida shall be of *167 fered a high quality pre-kindergarten learning opportunity by the State no later than the 2005 school year. The ballot summary also states the funding for the pre-kindergarten learning opportunity “shall be free ... without taking away funds used for existing education, health and development programs.” Thus, when read together, the ballot title and summary are accurate and informative, and provide fair notice of the content of the proposed amendment so that the voter will not be misled and can cast an intelligent and informed ballot. Finally, the ballot title does not exceed fifteen words and the ballot summary does not exceed seventy-five words in accordance with section 101.161(1). For these reasons, we conclude the ballot title and summary comply with section 101.161(1).
Accordingly, we hold that the initiative petition and proposed ballot title and summary meet the legal requirements of article XI, section 3 of the Florida Constitution, and section 101.161(1), Florida Statutes (2001). This opinion encompasses no other issues, and should not be construed as favoring or opposing -the passage of the proposed amendment.
It is so ordered.
ANSTEAD, C.J., and SHAW, HARDING, WELLS, PARIENTE, LEWIS, and QUINCE, JJ„ concur.

. The Committee on Pre-K, sponsors of the initiative petition, filed a brief in support of the proposed amendment. No briefs were filed in opposition to the proposed amendment.

. The language contained in the "whereas” clauses of the proposed initiative is not part of the actual proposed amendment and will not appear in the Florida Constitution if the amendment is adopted. "Performance of a judicial function is therefore not an issue with regard to the 'whereas' language.” Advisory Opinion to Attorney General re Protect People from the Health Hazards of Second-Hand Smoke, 814 So.2d 415, 422 n. 8 (Fla.2002); see also Letter from Robert A. Butterworth, Attorney General of the State of Florida, to the Honorable Charles Wells, Chief Justice, and the Justices of the Supreme Court of Florida at 7 (May 2, 2002) (on file with Supreme Court of Florida) ("These clauses are not part of the actual proposed amendment to Article IX, section 1, Florida Constitution.”)