PER CURIAM.
The Attorney General has requested this Court to review a proposed amendment to the Florida Constitution. We have jurisdiction. See art. TV, § 10, art. V, § 3(b)(10), Fla. Const. For the reasons explained below, we conclude that the proposed amendment does not meet the requirements of article XI, section 3 of the Florida Constitution[1] and section 101.161 of the Florida Statutes[2] and should not be included on the ballot for the 2006 general election.
FACTS AND PROCEDURAL HISTORY
A political committee called Committee for Fair Elections sponsored three initiative petitions to amend the Florida Constitution pursuant to the initiative petition process contained in article XI, section 3 of the Constitution. One of the petitions, *1221 entitled “Independent Nonpartisan Commission To Apportion Legislative and Congressional Districts Which Replaces Apportionment By the Legislature” (hereinafter Independent Commission Initiative) seeks to replace the current constitutional provision by which the Florida Legislature apportions the State into senatorial and representative districts[3] with a constitutional provision creating an Apportionment and Districting Commission to accomplish that task. The other two initiative petitions sponsored by the Committee for Fair Elections aré not before this Court for an advisory opinion.[4]
The full text of the proposed amendment provides:

Full Text

Delete current Article III, Section 16, and insert the following:
Section 16. Apportionment and Dis-tricting Commission. — .
(a) APPORTIONMENT AND DIS-TRICTING COMMISSION. In the year following each decennial census or when required by the United States or by court order, a commission shall divide the state into not less than 30 or more than 40 consecutively numbered single-member senatorial districts of convenient contiguous territory, not less than 80 or more than 120 consecutively numbered single-member representative districts of convenient contiguous territory as provided by this constitution or by general law and shall divide the state to create as many congressional districts as there are representatives in congress apportioned to this state. Districts shall be established in accordance with the constitution of this state and of the United States and shall be as nearly equal in population as practicable.
(1) On or before June 1 in the year following each decennial census, or within 15 days after legislative apportionment or congressional districting is required by law or by court order, 15 commissioners shall be certified by the respective appointing authorities to the custodian of records. The president of the senate and the speaker of the house of representatives each shall select and certify three commissioners. Members of minority parties in the senate shall elect one from their number who shall select and certify three commissioners. Members of minority parties in the house of representatives shall elect one from their number who shall select and certify three commissioners. On or before June 1 of the same year, the chief justice of the supreme court shall select three members of the commission, each of whom shall be a registered voter who for the previous two years was not registered as an elector of either of the two largest political parties in the senate and the house of representatives. The chief justice shall select commissioners from recommendations made by the chief judge of each district court of appeal. Each chief judge shall recommend three individuals who otherwise meet the requirements of this section and who reside in that district. From the individuals recommended by chief judges of the district courts of appeal, the chief justice *1222 shall select and certify three commissioners. No two commissioners selected by the chief justice shall reside in the same appellate district.
(2)a. No commissioner shall have served during the four years prior to his or her certification as an elected state official, member of congress, party officer or employee, paid registered lobbyist, legislative or congressional employee, and no commissioner shall be a relative, as defined by law, or an employee of any of the above.
b. As a condition of appointment, each commissioner shall take an oath affirming that the commissioner will not receive compensation as a paid registered lobbyist, or seek elected office in any legislative or congressional district for a period of four years after concluding service as a commissioner.
(3) The commission shall elect one of its members to serve as chair and shall establish its own rules and procedures. All commission actions shall require 10 affirmative votes. Meetings and records of the commission shall be open to the public and public notice of all meetings shall be given.
(4) Within 180 days after the commission is certified to the custodian of records, the commission shall file with the custodian of records its final report, including all required plans.
(5) After the supreme court determines that the required plans are valid, the commission shall be dissolved.
(b)FAILURE OF COMMISSION TO APPORTION; JUDICIAL APPORTIONMENT. If the commission does not timely file its final report including all required plans with the custodian of records, the commission shall be dissolved, and the attorney general shall, within five days, petition the supreme court of the state to make such apportionment. No later than the sixtieth day after the filing of such petition, the supreme court shall file with the custodian of records an order making such apportionment.
(c) JUDICIAL REVIEW OF APPORTIONMENT. Within 15 days after the final report of the commission is filed with the custodian of records, the attorney general shall petition the supreme court to review and determine the validity of the apportionment. The supreme court, in accordance with its rules, shall permit adversary interests to present their views and, within 30 days from filing the petition, shall enter its judgment.
(d) EFFECT OF JUDGMENT IN APPORTIONMENT. A judgment of the supreme court determining the apportionment to be valid or ordering judicial apportionment shall be binding upon all citizens of the state. Should the supreme court determine that the apportionment made by the commission is invalid, the commission, within 20 days after the ruling, shall adopt and file with the custodian of records an amended plan that conforms to the judgment of the supreme court. Within five days after the filing of an amended plan, the attorney general shall petition the supreme court of the state to determine the validity of the amended plan, or if the commission has failed to file an amended plan, report that fact to the court.
(e) JUDICIAL APPORTIONMENT. Should the commission fail to file an amended plan or should the supreme court determine the amended plan is invalid, the commission shall be dissolved, and the supreme court shall, not later than 60 days after receiving the petition of the attorney general, file with *1223 the custodian of records an order making such apportionment.
The Independent Commission Initiative petition was filed with the Florida Secretary of State as required by Florida law.[5] Pursuant to section 15.21, Florida Statutes (2005), the Secretary of State submitted the amendment to the Florida Attorney General and certified that the petition had obtained the signatures of voters as required by article XI, section 3 of the Florida Constitution.[6] In accordance with the provisions of article IV, section 10 of the Florida Constitution, and section 16.061, Florida Statutes (2005), the Attorney General petitioned this Court for an advisory opinion as to whether the text of the proposed amendment complies with the constitutional requirements of article XI, section 3, and whether the proposed ballot title and summary comply with the statutory requirements of section 101.161(1). The Attorney General also petitioned this Court for an advisory opinion as to whether the financial impact statement complies with the statutory requirements of section 100.371(6), Florida Statutes (2005).[7]
In response to the Attorney General’s request, we issued an order allowing interested parties to file briefs and heard oral arguments on the validity of the initiative petition. The Committee for Fair Elections filed briefs in support of the proposed amendment. Speaker of the Florida House of Representatives Alan Bense, Florida Senate members Charley Clary, Alfred Lawson, and Jim Sebesta, and Florida Congressional Representatives Mario Diaz-Balart, Lincoln Diaz-Balart, and Ileana Ros-Lehtinen filed briefs in opposition to the proposed amendment.
LAW AND ANALYSIS
Article XI, section 3 of the Florida Constitution gives Florida citizens the power to propose a revision or amendment to the Constitution through the initiative process. Article IV, section 10 requires the Attorney General to request an opinion of this Court as to the validity of any initiative petition circulated pursuant to this initiative process. In turn, article V, section 3(b)(10), requires this Court to render that advisory opinion. However, the Court’s inquiry in such cases is limited to two issues: (1) whether the amendment violates the single-subject requirement of article XI, section 3 of the Florida Constitution, and (2) whether the ballot title and summary violate the requirements of section 101.161(1), Florida Statutes (2005). See, e.g., Advisory Op. to Att’y Gen. re Amendment to Bar Gov’t From Treating *1224 People Differently Based on Race in Pub. Educ., 778 So.2d 888, 890-91 (Fla.2000).[8]
In addressing these two issues, this Court’s inquiry is governed by several general principles. First, we will not address the merits or wisdom of the proposed amendment. 778 So.2d at 891. Second, “[t]he Court must act with extreme care, caution, and restraint before it removes a constitutional amendment from the vote of the people.” Askew v. Firestone, 421 So.2d 151, 156 (Fla.1982). Specifically, where citizen initiatives are concerned, the “Court has no authority to inject itself in the process, unless the laws governing the process have been ‘clearly and conclusively’ violated.” Advisory Op. to Att’y Gen. re Right to Treatment & Rehab. for Non-Violent Drug Offenses, 818 So.2d 491, 498-99 (Fla.2002); see also Treating People Differently Based on Race in Pub. Educ., 778 So.2d at 891 (“In order for the Court to invalidate a proposed amendment, the record must show that the proposal is clearly and conclusively defective.... ”).
Article XI, section 3 of the Florida Constitution provides in relevant part:
The power to propose the revision or amendment of any portion or portions of this constitution by initiative is reserved to the people, provided that, any such revision or amendment, except for those limiting the power of government to raise revenue, shall embrace but one subject and matter directly connected therewith.
Art. XI, § 3, Fla. Const, (emphasis added). Thus, the single-subject requirement is a constitutional requirement for citizen initiative petitions. As this Court has explained, the single-subject limitation exists because the citizen initiative process does not afford the same opportunity for public hearing and debate that accompanies the other constitutional proposal and drafting processes (i.e., constitutional amendments proposed by the Legislature, by a constitutional revision commission, or by a constitutional convention). Advisory Op. to the Att’y Gen. re Fish & Wildlife Conservation Comm’n, 705 So.2d 1351, 1353 (Fla.1998).
The single-subject provision “is a rule of restraint designed to insulate Florida’s organic law from precipitous and cataclysmic change.” In re Advisory Op. to Att’y Gen.—Save Our Everglades, 636 So.2d 1336, 1339 (Fla.1994); see also Advisory Op. to Att’y Gen. re Tax Limitation, 644 So.2d 486, 490 (Fla.1994). The single-subject rule prevents an amendment from (1) engaging in “logrolling” or (2) “substantially altering or performing the functions of multiple branches of state government.” Advisory Op. to Att’y Gen. re Fla. Transp. Initiative for Statewide High Speed Monorail, Fixed Guideway or Magnetic Levitation Sys., 769 So.2d 367, 369 (Fla.2000).

Logrolling

Logrolling is a “practice whereby an amendment is proposed which contains unrelated provisions, some of which electors might wish to support, in order to get an otherwise disfavored provision passed.” Id. (quoting Advisory Op. to *1225 Att’y Gen. re Limited Casinos, 644 So.2d 71, 73 (Fla.1994)). In addressing the issue of logrolling, this Court determines whether the amendment manifests a “logical and natural oneness of purpose.” Advisory Op. to Att’y Gen. re Fla.'s Amendment to Reduce Class Size, 816 So.2d 580, 582 (Fla.2002) (quoting Fine v. Firestone, 448 So.2d 984, 990 (Fla.1984)). A proposed amendment meets this test when it “may be logically viewed as having a natural relation and connection as component parts or aspects of a single dominant plan or scheme. Unity of object and plan is the universal test.” Fine, 448 So.2d at 990 (quoting City of Coral Gables v. Gray, 154 Fla. 881, 19 So.2d 318, 320 (1944)).
In Save Our Everglades, this Court concluded that an initiative that created a trust to be funded by the sugar industry to restore the Everglades constituted logrolling because it encompassed the two objectives of restoring the Everglades, which was “politically fashionable,” and compelling the sugar industry to fund the restoration, which was “more problematic.” 636 So.2d at 1341. The Court explained that “[m]any voters sympathetic to restoring the Everglades might be antithetical to forcing the sugar industry to pay for the cleanup by itself, and yet those voters would be compelled to choose all or nothing.” Id. Similarly, the Court concluded that the ballot initiative at issue in Advisory Opinion to the Attorney General re Right of Citizens to Choose Health Care Providers, 705 So.2d 563 (Fla.1998), constituted logrolling because it combined two distinct subjects by banning limitations on health care provider choices imposed by law and by prohibiting private parties from entering into contracts that would limit health care provider choice. The amendment at issue in that case would have forced a voter who might favor or oppose one aspect of the ballot initiative to vote on the health care provider issue in an “all or nothing” manner. Id. at 566.
The sponsor asserts that the Independent Commission Initiative does not constitute logrolling because it creates a fifteen-member independent commission to replace the Legislature in the process of apportioning legislative and congressional districts in the year following each decennial census. The sponsor contends that all of the provisions of the proposed amendment are directly related to that single subject in that the provisions explain the composition of the redistricting commission, the requirements for serving as a commissioner, and the judicial mechanism for reviewing reapportionment plans. The opponents contend that the proposed amendment engages in logrolling because it (1) creates the new redistricting commission while also establishing new standards for districts by requiring them to be single-member districts and to be of convenient contiguous territory; (2) it alters the way state legislative and congressional districts are created; and (3) it adds a new qualification for legislators by requiring commission members to take an oath that they will not seek office as a state legislator or member of Congress for four years after serving on the redistricting commission.
We agree with the opponents that the proposed amendment does indeed encompass two separate subjects. Not only would the proposed amendment create a new redistricting commission, but it would also change the standards applicable to the districts that are created by the commission. Paragraph (a) of the proposed amendment would require the commission to divide the state into “single-member ... districts of convenient contiguous territory.” The current constitutional provision provides that the districts may be “of either contiguous, overlapping, or identical *1226 territory.” Art. Ill, § 16(a), Fla. Const. This “identical territory” provision permits the creation of multi-member districts. See In re Apportionment Law Senate Joint Resolution No. 1305, 1972 Regular Session, 263 So.2d 797, 806-07 (Fla.1972) (rejecting challenges to multi-member districts in the legislative apportionment plan and citing the proceedings of the Florida Constitutional Revision Commission in 1966 which defeated a proposed amendment to change this language in article III, section 16 and thereby require single-member districts).
The other provisions of the proposed amendment exhibit “a natural relation and connection as component parts or aspects of’ the new method proposed for apportionment. These provisions explain the composition of the commission, specify the apportionment process, and provide for judicial apportionment if the commission fails to complete its duty. However, the creation of new standards to be used in apportioning the districts is not a component part of this apportionment plan and results in logrolling. A voter who advocates apportionment by a redistricting commission may not necessarily agree with the change in the standards for drawing the legislative and congressional districts. Conversely, a voter who approves the change in district standards may not want to change from the legislative apportionment process currently in place. Thus, a voter would be forced to vote in the “all or nothing” fashion that the single subject requirement safeguards against. Thus, we conclude that the proposed amendment does not comply with this constitutional requirement.

Altering or Performing the Functions of Multiple Branches of Government

In assessing the second aspect of the single-subject requirement, the Court “must consider whether the proposal affects separate functions of government and how the proposal affects other provisions of the constitution.” In re Advisory Op. to the Att’y Gen.—Restricts Laws Related to Discrimination, 632 So.2d 1018, 1020 (Fla.1994). However, the fact that an amendment affects multiple functions of government does not automatically invalidate a citizen’s initiative. See High Speed Monorail, 769 So.2d at 367. As this Court has explained:
We recognize that the petition, if passed, could affect multiple areas of government. In fact, we find it difficult to conceive of a constitutional amendment that would not affect other aspects of government to some extent. However, this Court has held that a proposed amendment can meet the single-subject requirement even though it affects multiple branches of government.
Limited Casinos, 644 So.2d at 74. “A proposal that affects several branches of government will not automatically fail; rather, it is when a proposal substantially alters or performs the functions of multiple branches that it violates the single-subject test.” Fish & Wildlife Conservation Comm’n, 705 So.2d at 1353-54.
The opponents contend that the proposed amendment affects multiple branches of government because (1) the Legislature will be completely removed from both congressional redistricting and legislative reapportionment; (2) the Governor will no longer have approval or veto power over congressional redistricting; and (3) the judiciary will be given legislative power through the Chief Justice’s authority to appoint commissioners. There is no question that the amendment will substantially change the responsibilities and power of the Legislature in regard to congressional redistrieting and legislative reapportionment. However, the removal of the Governor’s approval or veto power *1227 over congressional redistricting is not a substantial impact on the executive branch. If we were to conclude otherwise, then the initiative process could never be used to change any aspect of the Legislature’s power to enact legislation because the Governor’s veto power would necessarily be involved. This would severely hamper the electorate’s ability to use the initiative process to amend or revise the Florida Constitution. Finally, the effect on the judiciary of nominating and appointing three members to the commission is neither cataclysmic nor precipitous. As this Court noted in Limited Casinos, it is “difficult to conceive of a constitutional amendment which would not affect other aspects of government to some extent.” 644 So.2d at 74. A proposal may affect multiple branches of government, as does the instant proposal, so long as it does not substantially alter or perform the functions of these branches. See Advisory Op. to Att’y Gen.—Fee on Everglades Sugar Prod., 681 So.2d 1124, 1128 (Fla.1996). Thus, we find no violation of this aspect of the single-subject requirement.

Ballot Title and Summary

When a constitutional amendment is submitted for vote by the electorate, a title and summary of the amendment must appear on the ballot. Section 101.161(1), Florida Statutes (2005), which sets forth the statutory requirements for the title and summary, is a “codification of the accuracy requirement implicit in article XI, section 5 of the Florida Constitution.” Advisory Op. to Att’y Gen. re Referenda Required for Adoption & Amendment of Local Gov’t Comprehensive Land Use Plans, 902 So.2d 763, 770 (Fla.2005). This accuracy requirement in article XI, section 5, functions as a kind of “truth in packaging” law for the ballot. Armstrong v. Harris, 773 So.2d 7, 13 (Fla.2000).[9] As explained by this Court,
The citizen initiative constitutional amendment process relies on an accurate, objective ballot summary for its legitimacy. Voters deciding whether to approve a proposed amendment to our constitution never see the actual text of the proposed amendment. They vote based only on the ballot title and the summary. Therefore, an accurate, objective, and neutral summary of the proposed amendment is the sine qua non of the citizen-driven process of amending our constitution.
Advisory Op. to Att’y Gen. re Additional Homestead Tax Exemption, 880 So.2d 646, 653-54 (Fla.2004) (citation omitted).
Section 101.161(1) provides in relevant part:
Whenever a constitutional amendment ... is submitted to the vote of the people, the substance of such amendment ... shall be printed in clear and unambiguous language on the ballot.... [T]he substance of the amendment ... shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure .... The ballot title shall consist of a caption, not exceeding 15 words in length, by which the measure is commonly referred to or spoken of.
(Emphasis added.) This Court has stated “that the ballot [must] be fair and advise the voter sufficiently to enable him intelligently to cast his ballot.” Askew v. Fire *1228 stone, 421 So.2d 151, 155 (Fla.1982) (emphasis removed) (quoting Hill v. Milander, 72 So.2d 796, 798 (Fla.1954)). While the ballot title and summary must state in clear and unambiguous language the chief purpose of the measure, they need not explain every detail or ramification of the proposed amendment. Carroll v. Firestone, 497 So.2d 1204, 1206 (Fla.1986). The ballot must, however, give the voter fair notice of the decision he or she must make. Askew, 421 So.2d at 155. The purpose of section 101.161 is to ensure that voters are advised of the amendment’s true meaning. In assessing the ballot title and summary, this Court should ask two questions, first, whether the ballot title and summary “fairly inform the voter of the chief purpose of the amendment,” and second, “whether the language of the title and summary, as written, misleads the public.” Additional Homestead Tax Exemption, 880 So.2d at 651 (quoting Right to Treatment & Rehab., 818 So.2d at 497, and Right to Choose Health Care Providers, 705 So.2d at 566).
The ballot title and summary of the proposed amendment provide:

Title

INDEPENDENT NONPARTISAN COMMISSION TO APPORTION LEGISLATIVE AND CONGRESSIONAL DISTRICTS WHICH REPLACES APPORTIONMENT BY LEGISLATURE

Summary

Creates fifteen member commission replacing legislature to apportion single-member legislative and congressional districts in the year following each decennial census. Establishes non-partisan method of appointment to commission. Disqualifies certain persons for membership to avoid partiality. Limits commission members from seeking office under plan for four years after service on commission. Requires ten votes for commission action. Requires Florida Supreme Court to apportion districts if commission fails to file a valid plan.
The opponents argue that the ballot title is misleading in its use of the terms “independent” and “nonpartisan” to describe the commission. The opponents also assert that these terms amount to improper editorializing. This Court has emphasized that the “ballot summary should tell the voter the legal effect of the amendment, and no more.” Additional Homestead Tax Exemption, 880 So.2d at 653 (quoting Evans v. Firestone, 457 So.2d 1351, 1355 (Fla.1984)). However, we have approved ballot summaries containing public policy statements that were also included in the proposed amendment. See, e.g., Advisory Op. to Att’y Gen. re Limiting Cruel & Inhumane Confinement of Pigs During Pregnancy, 815 So.2d 597, 597 (Fla.2002) (approving ballot summary that provided that “[i]nhumane treatment of animals is a concern of Florida citizens”); High Speed Monorail, 769 So.2d at 368 (approving ballot summary stating that the amendment’s purpose was to “reduce traffic and increase travel alternatives”).
The sponsor asserts that the terms are neither misleading nor editorializing, but an accurate statement of the nature of the redistricting commission. The sponsor contends that both the commission and its method of creation fall within the definition of nonpartisan because the commission members will not be influenced by or associated with one political party, will not be subject to oversight or control by the Legislature, legislative leadership or any political party, and will not be required to seek election or reelection to the commission.
While the commission itself may operate in an independent, nonpartisan fashion, the *1229 method of selecting the commission members is decidedly partisan. We find the ballot summary to be misleading in this regard. The ballot summary provides that the amendment “[e]stablishes [a] non-partisan method of appointment to [the] commission.” However, twelve of the fifteen commission members would be appointed by partisans because the Speaker of the Florida House of Representatives, the President of the Florida Senate, and a minority leader from each house would each appoint three commissioners. In fact, the proposed amendment only requires that the three members selected by the Chief Justice of this Court be nonpartisan. These three commissioners appointed by the Chief Justice each must be “a registered voter who for the previous two years was not registered as an elector of either of the two largest political parties in the senate and the house of representatives.” Thus, the ballot summary is misleading as to the method by which the commissioners would be chosen.
CONCLUSION
For the reasons set forth above, we conclude that the proposed amendment does not comply with the single-subject requirement of article XI, section 3 of the Florida Constitution and that the ballot summary is misleading and does not comply with section 101.161(1), Florida Statutes (2005). Accordingly, we strike the proposal from the ballot. Because the proposed amendment will not be placed on the ballot, it is unnecessary to address the Financial Impact Statement.
It is so ordered.
PARIENTE, C.J., WELLS, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
WELLS, J., concurs specially with an opinion, in which CANTERO and BELL, JJ., concur.
ANSTEAD, J., dissents.

. Article XI, section 3 gives Florida citizens the power to revise or amend the Florida Constitution through the citizen initiative process.

. Section 101.161, Florida Statutes (2005), governs the placement of constitutional initiatives and referenda on the ballot.

. See art. Ill, § 16, Fla. Const.

. The Secretary of State determined that a petition to establish additional standards for legislative and congressional districts exceeded the statutory word limitation set forth in section 101.161. Thus, that petition was never submitted to the Attorney General as specified in section 15.21, Florida Statutes (2005). The sponsors voluntarily dismissed this Court’s advisory review of a second petition, setting forth an implementation schedule for redistricting in 2007 should the voters approve the Independent Commission Initiative.

. Section 100.371(3), Florida Statutes (2005), requires the sponsor of an initiative amendment to register as a political committee and submit the text of the proposed amendment to the Secretary of State for approval of the form. Section 101.161(2), Florida Statutes (2005), provides that the substance and ballot title of a proposed initiative amendment must be prepared by the sponsor and approved by the Secretary of State.

. Article XI, section 3 of the Florida Constitution provides, in pertinent part, that the petition containing the proposed revision or amendment must be
signed by a number of electors in each of one half of the congressional districts of the state, and of the state as a whole, equal to eight percent of the votes cast in each of such districts respectively and in the state as a whole in the last preceding election in which presidential electors were chosen.

.Section 100.371(6) requires the Financial Impact Estimating Conference to complete an analysis and financial impact statement of the estimated increase or decrease in any revenues or costs to state or local governments resulting from the proposed initiative. If the initiative is approved for placement on the ballot, this financial impact statement is placed on the ballot.

. The opponents of the proposed amendment have asked this Court to address the propriety of the form of the signature petitions, which were combined into a unified petition subsequent to the approval of the text by the Secretary of State. We decline to do so as this issue can be more appropriately addressed in the circuit court. Cf. Advisory Op. to Att’y Gen.—Fee on Everglades Sugar Prod., 681 So.2d 1124, 1131-32 (Fla.1996) (addressing challenge to unified petition form that was initiated by opponents in declaratory judgment action in circuit court).

. Article XI, section 5(b) of the Florida Constitution provides:
A proposed amendment or revision of this constitution, or any part of it, by initiative shall be submitted to the electors at the general election provided the initiative petition is filed with the custodian of state records no later than February 1 of the year in which the general election is held.