PER CURIAM.
The Attorney General has requested this Court to review three initiative petitions to amend the Florida Constitution. See art. IV, § 10, Fla. Const.; § 16.061, Fla. Stat. (1995). We have jurisdiction. Art V, § 3(b)(10), Fla. Const. In response to the Attorney General’s request, we issued an order allowing interested parties to file briefs and heard oral arguments on the validity of the initiative petitions. Although we have consolidated these three petitions for review in this opinion, we will address each of the petitions separately.
Briefly, in case number 88,696, the petition seeks to eliminate the single-subject requirement for initiative petitions that would require full compensation to be paid to the property owner when the government restricts use of private real property causing a loss in the fair market value. In case number 88,697, the petition seeks to require voter approval of new taxes by the electorate of the taxing entity. In case number 88,698, in a related issue to the issue in case number 88,696, the petition seeks to provide compensation to landowners for a loss in fair market value when the government restricts use of real property. For the reasons expressed below, we find that each of these petitions must be stricken from the ballot.
This Court has previously addressed the propriety of initiative petitions dealing with subjects similar to those before us today. See, e.g., Advisory Opinion to Attorney General re Tax Limitation, 644 So.2d 486 (Fla.1994) (Tax Limitation I). In Tax Limitation I, we found the initiative petitions dealing with voter approval of new taxes, with property rights, and with the requirement of a two-thirds vote for new constitutionally imposed state fees or taxes legally deficient; however, we found no infirmity with an initiative creating an exception to the single-subject requirement for initiatives limiting the power of the government to raise revenue. Id. This initiative was then placed on the ballot and approved by the voters. Subsequently, we found that the initiative petition which we rejected in Tax Limitation I, requiring a two-thirds vote for any constitutionally imposed tax or fee, now fell within this exception. See Advisory Opinion to Attorney General re Tax Limitation, 673 So.2d 864 (Fla.1996) (Tax Limitation II). It is in the wake of these decisions that we consider the initiative petitions before us today.
In reviewing the propriety of these initiative petitions, this Court does not rule on the merits or wisdom of the proposal but rather determines the legal issues presented by the constitution and relevant statutes. Tax Limitation I, 644 So.2d at 489. Our legal analysis is limited to two issues: whether the initiative petition violates the single-subject requirement of article XI, section 3 of the Florida Constitution; and whether the ballot title and summary are misleading, in violation of section 101.161(1), Florida Statutes (1995). Concerning the first issue, arti- *1307 ele XI, section 3 of the Florida Constitution, provides in relevant part:
The power to propose the revision or amendment of any portion or portions of this constitution by initiative is reserved to the people, provided that, any such revision or amendment, except for those limiting the power of government to raise revenue, shall embrace but one subject and matter directly connected therewith.
This requirement is a rule of restraint that protects against unbridled cataclysmic changes in Florida’s organic law. See Advisory Opinion to the Attorney General re Fee on Everglades Sugar Production, 681 So.2d 1124 (Fla.1996). Additionally, this rule protects voters from “log-rolling” or being forced to accept an unfavorable portion of an initiative in order to enact a favorable change in the constitution. See Fine v. Firestone, 448 So.2d 984, 988 (Fla.1984). Consequently, to comply with the single-subject requirement, an initiative should manifest a “logical and natural oneness of purpose.” Id. at 990.
This determination requires this Court to consider whether the proposal affects separate functions of government and how the proposal affects other provisions of the constitution.[1] See In re Advisory Opinion to the Attorney General-Restricts Laws Related to Discrimination, 632 So.2d 1018, 1020 (Fla.1994). It is important for an initiative to identify the provisions of the constitution substantially affected by the proposed amendment in order for the public to understand the contemplated changes in the constitution and to ensure that the initiative’s effect on other unnamed provisions is not left unresolved and open to various interpretations. Tax Limitation I, 644 So.2d at 490.
Concerning our review of the ballot title and summary, under section 101.161(1), Florida Statutes (1995), a proposed initiative’s ballot title and summary must state in clear and unambiguous language the initiative’s primary purpose. This requirement provides the voters with fair notice of the contents of the proposed initiative so that the voter will not be misled as to its purpose and can cast an intelligent and informed ballot. See Fee on Everglades Sugar Production, 681 So.2d at 1127. We now turn to each of the initiative petitions.

No. 88,696

The initiative petition in this case is titled: “PEOPLE’S PROPERTY RIGHTS AMENDMENTS PROVIDING COMPENSATION FOR RESTRICTING REAL PROPERTY USE MAY COVER MULTIPLE SUBJECTS.” The summary provides:
This provision would expand the people’s rights to initiate constitutional changes by allowing amendments to cover multiple subjects that require full compensation be paid to the owner when government restricts use (excepting common law nuisances) of private real property causing a loss in fair market value, which in fairness should be borne by the public. This amendment becomes effective the day following voter approval.
The text of the proposed amendment provides:
Insert the underlined words in Article XI, Section 3, on the day following voter approval:
INITIATIVE-The power to propose the revision or amendment of any portion or portions of this constitution by initiative is reserved to the people, provided that, any such revision -or amendment, except for those limiting the power of government to raise revenue or those that require full compensation be paid to the owner when government restricts use (except common law nuisances) of private real property causing a loss in the fair market value, which in fairness shoidd be borne by the public, shall em *1308 brace but one subject and matter directly connected therewith.
The Attorney General asserts that in light of our holding in Tax Limitation I that an initiative petition exempting revisions or amendments limiting revenues from the single-subject requirement did not violate the single-subject requirement, this initiative does not appear to violate the single-subject requirement. The proponents of the initiative similarly assert that this initiative is identical to the one approved in Tax Limitation I and does not violate the single-subject requirement. On the other hand, the opponents claim that unlike the initiative proposed in Tax Limitation I, the initiative we consider today substantially affects multiple branches of government and multiple functions performed by different levels of government. We agree with the opponents.
In Tax Limitation I, we approved the language of the following proposed amendment to article XI, section 3 of the Florida Constitution regarding the single-subject requirement for a revision or amendment to the constitution: “[A]ny such revision or amendment, except for those limiting the power of government to raise revenue, shall embrace but one subject and matter directly connected therewith.” Tax Limitation I, 644 So.2d at 495-96. In reaching this determination, we found that this initiative dealt solely with limiting the power to raise revenue and would substantially alter only this article of the constitution. Id. at 496. The initiative approved in Tax Limitation I confronted the issue of raising revenue, a legislative function. See art. VII, § 1(a), Fla. Const.; Campus Communications, Inc. v. Department of Revenue, 478 So.2d 1290, 1293 n. 1 (Fla.1985) (“The power to tax lies with the legislative branch.”). The single-subject requirement, however, cannot be altered by an amendment which itself deals with more than one subject.
The issue of property rights clearly affects the powers of the legislature. The legislative branch is empowered to enact legislation which establishes standards and criteria for regulating the use of land. Additionally, the legislature is required by article II, section 7 of the Florida Constitution to regulate the use of land to protect Florida’s natural resources and scenic beauty.
However, the subject of land use also substantially affects the executive branch of government. The executive branch is charged with the responsibility of carrying out the various functions of government which in multiple ways impact the use of real' property in Florida. Restriction of use of real property inherently affects multiple functions of the executive branch in executing its responsibility. These functions include zoning, fire-protection regulations, storm-water drainage, garbage removal, clean-air requirements, and numerous others. This initiative affects not just legislative appropriations and statutory enactments but executive enforcement and decision-making. Consequently, it is the substantial impact of this initiative on both the legislative and executive branches of government that distinguishes it from the initiative in Tax Limitation I. See Advisory Opinion to the Attorney General re Fee on Everglades Sugar Production, 681 So.2d at 1128 (finding that while a proposal may affect multiple branches of government, it may not substantially alter or perform the functions of these branches). In addition, we find that this initiative would have a distinct and substantial effect on more than one level of government. The state, special districts, and local governments have various legislative, executive, and quasi-judicial functions which are applicable to land use including comprehensive planning, zoning, and controlling storm-water drainage and flood waters. See, e.g., Tax Limitation I, 644 So.2d at 494-95. Therefore, we hold that the proposed initiative is constitutionally deficient because it violates the single-subject requirement.
We also find that the initiative’s ballot title and summary are misleading. The title provides, “People’s Property Rights Amendments Providing Compensation for Restricting Real Property Use May Cover Multiple Subjects.” The initiative’s summary refers to the owner of real property but does not define “owner.” Consequently, the use of the term “people” in the title “People’s Property Rights Amendments” is confusing because it is unclear if “owner” is restricted to people who own the property or also to cor *1309 porate entities.[2] See Advisory Opinion to the Attorney General re Limited Casinos, 644 So.2d 71, 75 (Fla.1994) (finding that section 101.161(1) has always been interpreted to mean that the ballot title and summary must be read together in determining if the ballot information properly informs the voter).
The Attorney General has pointed out several other infirmities with this initiative’s summary. The term “common law nuisance” is not defined, and therefore the voter is not informed as to what restrictions are compen-sable under the terms of the amendment. Also, the initiative refers to “loss in fair market value, which in fairness should be borne by the public” but does not provide a definition of when “in fairness” a governmental entity may be forced to compensate a landowner for its actions. This fairness standard is a subjective standard; it is within the subjective understanding of each voter to interpret the meaning of the “in fairness” standard. For these reasons, we find that this proposal must be stricken from the ballot.

No. 88,967

The second initiative petition is titled: “VOTER APPROVAL REQUIRED FOR NEW TAXES.” The summary for the initiative reads:
Requires voter approval of new state, local or other taxes. New taxes include initiation of new taxes, increases in tax rates and eliminating tax exemptions.
Allows emergency tax increases, lasting up to 12 months, if approved by three-fourths of a taxing entity’s governing body.
Substantially affects Article VII Sections 1(a), 1(b), 2, 5, 7 and 9.
Effective on the day following voter approval.
The text of the initiative, which would be added to article VII, section 1, provides:
( ) VOTER APPROVAL REQUIRED FOR NEW TAXES. No new taxes may be imposed except upon approval in a vote of the electors of the state, local, or other taxing entity seeking to impose the tax.
1. DEFINITION OF NEW TAX. The term new tax, for this subsection, includes the initiation of a new tax, the increase in the tax rate of any tax, or the removal of any exemption to any tax.
2. EMERGENCY TAXES. This subsection shall not apply to taxes enacted, for an effective period not to exceed 12 months, by a three-fourths vote of the governing body of a state, local, or other taxing entity after the governing body has made a finding of fact that failure to levy the tax will pose an imminent and particularly described threat to the health or safety of the public.
This Court considered a similar initiative in Tax Limitation I. Without deciding whether the initiative dealt with multiple subjects, we found the initiative violated the single-subject requirement because it substantially affected specific provisions of the constitution without identifying them. Tax Limitation I, 644 So.2d at 492. Additionally, we found misleading the use of a question to describe the initiative. Id. at 494.
The proponents of the initiative which we consider in the instant case assert that two things of significance have occurred since our opinion in Tax Limitation I. First, the exception to the single-subject requirement for initiatives which limit the power of government tó raise revenue has been enacted. Second, the ballot title and summary have been redrafted to eliminate the defects of the earlier petition by eliminating the use of a question and identifying the substantially affected provisions of the constitution.
The Attorney General writes that the initiative appears to fall within the exception to the single-subject requirement. However, the Attorney General finds that the initiative’s ballot title and summary are misleading because they do not advise the voter that this initiative will eliminate the current constitutional cap of ten mills without voter approval. Opponents of the initiative contend that the initiative violates the single-subject requirement because it combines revenue limitation with other subjects and that its ballot title and summary are also misleading.
*1310 We first address the question of whether this initiative falls within the exception to the single-subject requirement. In order to meet this exception, the initiative’s focus must be limited solely to the power of government to raise revenue. Tax Limitation I, 644 So.2d at 496; see also Tax Limitation II (finding that an initiative requiring a two-thirds vote for new constitutionally imposed taxes/fees fell within the exception to the single-subject requirement). If the initiative combines revenue limitation and other subjects, then it must comply with the single-subject requirement. Id. The exception does not authorize revenue-limitation initiatives which substantially change the powers or functions of more than a single level or branch of government. Rather, we construe the exception to only remove the single-subject requirement for initiatives which involve methods of revenue raising.[3]
We find that this initiative affects subjects other than methods of revenue raising. When considering a similar initiative petition in Tax Limitation I, we noted that an initiative requiring voter approval for new taxes will have significant impact on the home-rule powers granted to local government in our present constitution. Id. at 492-93; cf. Harris v. City of Sarasota, 132 Fla. 568, 576, 181 So. 366, 369 (1938) (“Taxation is essential to the maintenance of sovereign government....”). This home-rule power is derived from article VIII, Florida Constitution (“Local Government”), and from article VII, section 9, Florida Constitution (“Local Taxes”). Chapter 200, Florida Statutes (1995), provides a framework for local governments to determine millages and to hold public hearings on the proposed budgets. Once a preliminary budget is adopted and a tentative millage set, the millage-determination procedures of chapter 200 require additional notice and public hearings before a final budget is adopted and a final millage rate determined. This initiative would change this process. Therefore, the initiative concerns not only revenue-raising but also the local government budgeting process, a process which is constitutionally grounded.
Additionally, we find that this initiative affects several branches of government through its substantial impact on article IX, Florida Constitution (“Education”). Article IX, section 1, provides:
Adequate provision shall be made by law for a uniform system of free public schools and for the establishment, maintenance and operation of institutions of higher learning and other public education programs that the needs of the people may require.
The Governor and Florida Cabinet constitute the State Board of Education, which supervises the operation of the public school system in Florida. See art. IX, § 2, Fla. Const.
The Florida Legislature must determine how much money to spend on education each year and how to fund this budget. Under the constitution, school districts may levy ad valorem taxes when authorized by law. See art. VII, § 9, Fla. Const.; Florida Department of Education v. Glasser, 622 So.2d 944 (Fla.1993). Additional funding comes from state funds. See ch. 236, Fla. Stat. (1995). By general law, the legislature has established funding formulae in order to fund the public school system. See id. These formu-lae also compensate for the disparity between different school districts. See id.; Department of Education v. School Bd. of Collier County, 394 So.2d 1010, 1013 (Fla.1981).
Specifically, these formulae calculate the minimum millage rate that each school district is required to pay as certified by the Commissioner of Education. See § 236.081(4), Fla. Stat. (1995).[4] This “local effort” varies each year. Under this initiative, if the millage rate increased for a certain school district, a referendum would be required. Because the millage rate is based upon a statewide evaluation, the results of this vote would have an impact beyond the immediate school district to the entire state. *1311 A negative vote in a local referendum could scuttle the state plan and would result .in a constitutional impasse because of conflicting constitutional requirements. Thus, it would plainly impact the constitutional requirement for adequate provisions for free public schools.
Moreover, this initiative would obviously affect the budgetary powers of the legislature in article III, section 19 (“State Budgeting, Planning and Appropriations Processes”). It would also affect article XII, section 15 (“Special District Taxes”). Since this initiative impacts several. branches of government and several levels of government, it does not fall within the exemption to the single-subject rule, and it violates the single-subject rule.
We also find misleading the initiatives’s ballot title and summary. Specifically, we find that the summary’s definition of new tax as “increases in tax rates”[5] is misleading because it does not distinguish between an increase in the amount of money paid on taxable property or the actual rate at which the property is being taxed. Also, the absence of a more complete definition of the term “exemption” is misleading because the voting public would not readily understand the distinction between an exemption and immunity from taxation. Clearly, the initiative has an impact on articles and sections of the constitution other than the sections of article VII set forth in the summary. As we noted in this opinion, article III, article VIII, article IX, and article XII are substantially affected. In addition, we also agree with the Attorney General’s observation that the initiative is misleading because it does not inform the voter that the initiative will eliminate the current cap of ten mills without voter approval. See Tax Limitation I, 644 So.2d at 494. Accordingly, this initiative must be stricken from the ballot.

No. 88,698

Last, we address the third initiative petition, titled: “PROPERTY RIGHTS: COMPENSATION FOR UNFAIR VALUE LOSS CAUSED BY GOVERNMENTAL USE RESTRICTIONS ON REAL PROPERTY.” The summary provides:
When government restricts use (excepting common law nuisances) of private property causing a loss in fair market value, which in fairness should be borne by the public, full compensation shall be paid to the owner.
All issues tried by jury without prior resort to administrative remedies. Substantially affects constitutional provisions including Article II, Section 7. Effective day after voter approval for new actions or regulations and, following effective date, new applications of existing regulations.
The full text of the initiative would add a new section to article X and provides:
SECTION ( ) — PROPERTY RIGHTS: COMPENSATION FOR UNFAIR VALUE LOSS CAUSED BY GOVERNMENTAL USE RESTRICTIONS ON REAL PROPERTY.
When any action or regulation by the state, its agencies or political subdivisions restricts the use (other than nuisances at common law) of part or all of private real property causing a loss in the fair market value of the affected real property for the public good, which in fairness should be borne by the public as a whole, full compensation shall be paid to the owner thereof.
All issues shall be determined by jury trial in circuit court without prior resort to administrative remedies.
This provision shall apply to actions taken and regulations enacted after the effective date of this amendment as well as to applications after the effective date of this amendment of regulations enacted on or before the effective date of this amendment without abrogating any other remedy lawfully available.
In Tax Limitation I, we struck from the ballot an initiative which would have provided *1312 full compensation to an owner when governmental action damages a property right, finding that the initiative violated both the single-subject requirement and the ballot title and summary requirements. Tax Limitation I, 644 So.2d at 494-95. The Attorney General and other opponents of the initiative suggest that the initiative we consider today similarly fails these requirements. The proponents of the initiative contend that this initiative cures the problems of the earlier initiative because it is more limited in scope and only requires compensation for losses in fair market value caused by restrictions which should in fairness be borne by the public.
As we did in Tax Limitation I, we find that this initiative violates the single-subject requirement because it substantially alters the functions of multiple branches of government. Id. We find our statements therein particularly relevant:
This initiative not only substantially alters the functions of the executive and legislative branches of state government, it also has a very distinct and substantial [effect] on each local governmental entity. The ability to enact zoning laws, to require development plans, to have comprehensive plans for a community, to have uniform ingress and egress along major thoroughfares, to protect the public from diseased animals or diseased plants, to control and manage water rights, and to control or manage storm-water drainage and flood waters, all would be substantially affected by this provision.... We also note that the initiative transfers all administrative remedies for police power actions that damage private property interests from the executive branch to the judicial branch.
Id. at 494-95. Accordingly, this initiative violates the single-subject requirement.[6]
Regarding the ballot title and summary, we find this initiative suffers from similar infirmities to the first initiative we addressed. As noted above, the absence of a definition of “common law nuisance” or “losses in fair market value, which in fairness should be borne by the public” provides uncertainty in interpreting the petition. Thus, the summary is not stated in the required clear and unambiguous language.
In conclusion, we find that all three initiative petitions before us today must be stricken from the ballot.
It is so ordered.
OVERTON, SHAW, HARDING, WELLS and ANSTEAD, JJ., concur.
GRIMES, J., concurs in result only with an opinion.

. A proposed amendment meets this test when it "may be logically viewed as having 'a natural relation and connection as component parts or aspects of a single dominant plan or scheme.” Advisory Opinion to the Attorney General re Florida Locally Approved Gaming, 656 So.2d 1259, 1263 (Fla.1995) (quoting City of Coral Gables v. Gray, 154 Fla. 881, 883-84, 19 So.2d 318, 320 (1944)). Further, the test is functional and not locational, and if a proposed amendment changes more than one governmental function, then it violates the single-subject requirement. Evans v. Firestone, 457 So.2d 1351, 1354 (Fla.1984).

. We additionally find that the lack of the definition of the term “owner” is misleading.

. For example, an initiative could involve limitations of the powers to have both a tangible and an intangible personal property tax.

. In addition, each school board has the discretion whether to levy all or part of discretionary local millage for operations. See, e.g., § 236.25, Fla. Stat. (1995).

. The wording of the initiative itself is phrased in the singular: "increase in the tax rate of any tax.”

. Additionally, we note that the initiative fails to adequately identify the constitutional provisions affected by it. We agree with the Attorney General's assertion that the phrase "[s]ubstantially affects constitutional provisions including Article II, Section 7" implies that other constitutional provisions are affected, yet no other provision is mentioned.