880 So.2d 646 (2004)
ADVISORY OPINION TO the ATTORNEY GENERAL RE ADDITIONAL HOMESTEAD TAX EXEMPTION.
No. SC04-942.
Supreme Court of Florida.
July 15, 2004.
Charles J. Crist, Jr., Attorney General, Tallahassee, FL, for Petitioner.
Jeffrey Saull, Chair, West Palm Beach, FL; and Barry S. Richard of Greenberg Traurig, P.A., Tallahassee, FL; Arthur J. *647 England, Jr., and Charles M. Auslander of Greenberg Traurig, P.A., Miami, FL, on behalf of Families for Lower Property Taxes, Inc., for Proponents.
Joy Causseaux Frank, General Counsel to Florida Association of District School Superintendents, Tallahassee, FL; and Jon Mills and Timothy McLendon, Gainesville, FL, on behalf of Florida School Boards Association and Florida Association of District School Superintendents; and Virginia Saunders Delegal, General Counsel, Florida Association of Counties, Inc., Tallahassee, FL, on behalf of Florida Association of Counties, Inc.; and Victoria L. Weber, Dan R. Stengle, and Gary V. Perko of Hopping Green and Sams, P.A., Tallahassee, FL, on behalf of Florida League of Cities; and Katherine E. Giddings, Joseph W. Hatchett, Nancy Mason Wallace, James E. Joanos of Akerman Senterfitt, P.A., Tallahassee, FL, on behalf of Floridians for Responsible Tax Reform, for Opponents.
PER CURIAM.
The Attorney General has requested that this Court review a proposed amendment to the Florida Constitution. We have jurisdiction. See art. IV, § 10; art. V, § 3(b)(10), Fla. Const.

I. FACTS
Families for Lower Property Taxes, Inc., a political committee registered pursuant to section 106.03, Florida Statutes (2003), has invoked the petition process of article XI, section 3, of the Florida Constitution to propose a constitutional amendment through citizen initiative. The amendment would provide an additional homestead exemption of $25,000 for persons having title to real estate on which they maintain their permanent residence.
The ballot title for the proposed amendment is "Additional Homestead Tax Exemption." The summary for the proposed amendment provides:
This amendment provides property tax relief to Florida home owners by increasing the homestead exemption on property assessments by an additional $25,000.
The full text of the proposed amendment reads as follows:
Article VII Section 6 of the Florida Constitution is hereby amended to add the following paragraph (g).
(g) By general law and subject to conditions specified therein, effective for assessments for 2005 and each year thereafter, an additional homestead exemption of twenty-five thousand dollars shall be granted to any person who has the legal or equitable title to real estate and maintains thereon the permanent residence of the owner.
The Secretary of State submitted the amendment to the Attorney General, pursuant to section 15.21(2), Florida Statutes (2003). Pursuant to section 16.061(1), Florida Statutes (2003), the Attorney General petitioned this Court for an advisory opinion as to whether the text of the proposed amendment complies with the single-subject requirement of article XI, section 3, Florida Constitution, and whether the ballot title and summary comply with the requirements of section 101.161, Florida Statutes (2003). Families for Lower Property Taxes, Inc. has filed a brief in favor of the amendment. The Florida School Boards Association, the Florida Association of District School Superintendents,[1] Floridians for Responsible Tax Reform, *648 Florida Association of Counties, Inc., and the Florida League of Cities have filed briefs in opposition.

II. THIS COURT'S INQUIRY
When the Court renders an advisory opinion concerning a proposed constitutional amendment arising through the citizen initiative process, no lower court ruling exists for the Court to review. Therefore, no conventional standard of review applies. Instead, the Court limits its inquiry to two issues: (1) whether the amendment violates the single-subject requirement of article XI, section 3, Florida Constitution, and (2) whether the ballot title and summary violate the requirements of section 101.161(1), Florida Statutes (2003). See, e.g., Advisory Op. to Att'y Gen. re Amendment to Bar Gov't From Treating People Differently Based on Race in Pub. Educ., 778 So.2d 888, 890-91 (Fla.2000).
In addressing these two issues, the Court's inquiry is governed by several general principles. First, we will not address the merits or wisdom of the proposed amendment. See, e.g., Amendment to Bar Gov't From Treating People Differently Based on Race in Pub. Educ., 778 So.2d at 891. Second, "[t]he Court must act with extreme care, caution, and restraint before it removes a constitutional amendment from the vote of the people." Askew v. Firestone, 421 So.2d 151, 156 (Fla.1982). Specifically, where citizen initiatives are concerned, "the Court has no authority to inject itself in the process, unless the laws governing the process have been `clearly and conclusively' violated." See Advisory Op. to Att'y Gen. re Right to Treatment and Rehabilitation for Non-Violent Drug Offenses, 818 So.2d 491, 498-99 (Fla.2002); see also Amendment to Bar Gov't From Treating From Treating People Differently Based on Race in Pub. Educ., 778 So.2d at 891 ("In order for the Court to invalidate a proposed amendment, the record must show that the proposal is clearly and conclusively defective.").

III. THE SINGLE-SUBJECT RULE
A threshold issue raised by the interested parties in this case is whether the single-subject rule applies to the proposed amendment. Article XI, section 3 provides an exception to the single-subject rule for proposed amendments which limit the power of government to raise revenue. "In order to meet this exception, the initiative's focus must be limited solely to the power of government to raise revenue." Advisory Op. to Att'y Gen. re People's Property Rights Amendments, 699 So.2d 1304, 1310 (Fla.1997). Here the initiative's focus is to provide an additional homestead exemption which, although it would reduce the taxable value of certain homestead property, does not in any way limit the basic power of the government to raise revenue. Cf. Advisory Op. to Att'y Gen. re Tax Limitation, 673 So.2d 864, 865 (Fla. 1996) (finding that an initiative requiring a two-thirds vote for new constitutionally imposed state taxes or fees fell within this exception to the single-subject rule). Accordingly, the proposed amendment does not fall within the exception to the single-subject rule.
Article XI, section 3, Florida Constitution, sets forth the requirements for a proposed constitutional amendment arising via the citizen initiative process and contains the single-subject rule:
SECTION 3. Initiative.The power to propose the revision or amendment of any portion or portions of this constitution by initiative is reserved to the people, provided that, any such revision or amendment, except for those limiting the power of government to raise revenue, *649 shall embrace but one subject and matter directly connected therewith.

Art. XI, § 3, Fla. Const. (emphasis added). The single-subject requirement is a "rule of restraint" that was "placed in the constitution by the people to allow the citizens, by initiative petition, to propose and vote on singular changes in the functions of our governmental structure." Advisory Op. to Att'y Gen. re Prohibiting Public Funding of Political Candidates' Campaigns, 693 So.2d 972, 975 (Fla.1997) (quoting Fine v. Firestone, 448 So.2d 984, 988 (Fla.1984)). Specifically, the single-subject rule prevents an amendment from engaging in either of two practices: (a) logrolling, or (b) substantially altering or performing the functions of multiple branches of state government.

A. Logrolling
Logrolling is "a practice wherein several separate issues are rolled into a single initiative in order to aggregate votes or secure approval of an otherwise unpopular issue." In re Advisory Op. to Att'y Gen. Save Our Everglades, 636 So.2d 1336, 1339 (Fla.1994); see also Advisory Op. to Att'y Gen. re Limited Casinos, 644 So.2d 71, 73 (Fla.1994) ("A primary reason for the single-subject restriction is to prevent `logrolling,' a practice whereby an amendment is proposed which contains unrelated provisions, some of which electors might wish to support, in order to get an otherwise disfavored provision passed."); Fine, 448 So.2d at 993 ("The purpose of the single-subject requirement is to ... avoid voters having to accept part of a proposal which they oppose in order to obtain a change which they support."). In addressing this issue, the Court utilizes a "oneness of purpose" standard. See Fine, 448 So.2d at 990 ("[T]he one-subject limitation deal[s] with a logical and natural oneness of purpose."). A proposed amendment meets this test when it "may be logically viewed as having a natural relation and connection as component parts or aspects of a single dominant plan or scheme. Unity of object and plan is the universal test...." Id. (quoting City of Coral Gables v. Gray, 154 Fla. 881, 19 So.2d 318, 320 (1944)).
In this case, the proposed amendment embraces one purpose, an increase in the homestead exemption. Accordingly, the amendment does not violate the single-subject rule by engaging in impermissible logrolling.

B. Altering or Performing the Functions of Multiple Branches of Government
The single-subject rule also prevents "a single amendment from substantially altering or performing the functions of multiple branches of government and thereby causing multiple `precipitous' and `cataclysmic' changes in state government." Right to Treatment and Rehabilitation for Non-Violent Drug Offenses, 818 So.2d at 495. We previously have held that while most amendments will "affect" multiple branches of government, this fact alone is insufficient to invalidate an amendment on single-subject grounds:
As the proponents of the amendment point out, the fact that an amendment affects multiple functions of government does not automatically invalidate a citizens' initiative. As we explained in detail in [a prior case]:
We recognize that the petition, if passed, could affect multiple areas of government. In fact, we find it difficult to conceive of a constitutional amendment that would not affect other aspects of government to some extent. However, this Court has held that a proposed amendment can meet the single-subject requirement even though it affects multiple branches of government.
*650 Advisory Op. to Att'y Gen. re Fla. Transp. Initiative, 769 So.2d 367, 369-70 (Fla.2000) (emphasis added). Further, "the possibility that an amendment might interact with other parts of the Florida Constitution is not sufficient reason to invalidate the proposed amendment." Limited Casinos, 644 So.2d at 74. The abiding test is as follows:
A proposal that affects several branches of government will not automatically fail; rather, it is when a proposal substantially alters or performs the functions of multiple branches that it violates the single-subject test.
Advisory Op. to Att'y Gen. re Fish & Wildlife Conservation Comm'n, 705 So.2d 1351, 1353-54 (Fla.1998) (emphasis added).
In this case, opponents of the amendment raise essentially two main arguments with regard to this aspect of the single-subject rule. First, they assert that the amendment substantially alters or performs the functions of multiple branches and levels of government essentially by reducing the funds available to them. Several opponents cite to Advisory Opinion to the Attorney General re Requirement for Adequate Public Education Funding, 703 So.2d 446 (Fla.1997), in support of their position. In that case, the Court considered a proposed amendment which would require allocation of forty percent of state appropriations to public education. In striking this proposed amendment from the ballot, the Court concluded that not only did it "substantially alter the legislature's present discretion in making value choices as to appropriations among the various vital functions of State government," but by arbitrarily limiting agencies, local governments and special districts to the remaining sixty percent of appropriations, it substantially altered the "operation of the various requirements for finance and taxation in article VII in respect to bonded indebtedness and State mandates to local governments, thereby affecting the functioning of all State agencies, local governments, and special districts." Id. at 449. Additionally, the Court concluded that the amendment would limit the Governor's power of line-item veto and the constitutional function of the Governor and Cabinet in reducing the state budget in the event of a revenue shortfall. Id.
Here, opponents' basic argument is that the potential loss of revenue resulting from the additional homestead exemption will make it harder for counties, municipalities and special districts to perform many of their functions, and may require, among other things, budgeting changes, reduction in funding for various services, and changes in millage rates. Opponents also argue that the loss of revenue may require the Legislature to take certain actions to ensure adequate funding for public education. These potential adverse effects are distinguishable from the type of "multiple `precipitous' and `cataclysmic' changes" described in the Adequate Public Education Funding case. See also Advisory Op. to Att'y Gen. re People's Property Rights Amendments, 699 So.2d 1304 (Fla.1997) (concluding proposed amendment requiring full compensation be paid to owner when government restricts use of private real estate in certain circumstances would substantially affect Legislature's power to enact legislation establishing standards and criteria for land use regulation, Legislature's constitutional duty to regulate land use to protect natural resources and scenic beauty, multiple functions of the executive branch, and more than one level of government). While an additional homestead exemption may result in a loss of revenue which would most certainly affect the governmental entities to which that revenue previously flowed, it would not essentially dictate and control the use of funds actually received, as the proposed amendment in Adequate Public Education Funding *651 would have. Accordingly, we find that the proposed amendment does not substantially alter or perform the functions of multiple branches of government in violation of the single-subject rule.
Second, opponents of the amendment assert that it substantially affects other provisions of the constitution without identification. We disagree. The proposed amendment provides for an additional homestead exemption in article VII, section 6. No provisions of the Florida Constitution outside of article VII involve homestead property tax exemptions.[2] In addition, the Court has repeatedly stated that "the possibility that an amendment might interact with other parts of the Florida Constitution is not sufficient reason to invalidate the proposed amendment." Advisory Op. to Att'y Gen. re Fee on Everglades Sugar Prod., 681 So.2d 1124, 1128 (Fla.1996) (quoting Limited Casinos, 644 So.2d at 74).
Accordingly, the proposed amendment satisfies the single-subject requirement of article XI, section 3, of the Florida Constitution.

IV. BALLOT TITLE AND SUMMARY
Section 101.161, Florida Statutes (2003), sets forth the requirements for the ballot title and summary of a proposed constitutional amendment and provides in relevant part:
[T]he substance of the amendment or other public measure shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure. The ballot title shall consist of a caption, not exceeding 15 words in length, by which the measure is commonly referred to or spoken of.
§ 101.161(1), Fla. Stat. (2003). The basic purpose of this provision is "to provide fair notice of the content of the proposed amendment so that the voter will not be misled as to its purpose, and can cast an intelligent and informed ballot." See Advisory Op. to Att'y Gen. re Fee On Everglades Sugar Prod., 681 So.2d 1124, 1127 (Fla.1996).
The Court in In re Advisory Opinion to the Attorney GeneralSave Our Everglades, 636 So.2d 1336 (Fla.1994), explained further:
"[S]ection 101.161 requires that the ballot title and summary for a proposed constitutional amendment state in clear and unambiguous language the chief purpose of the measure." Askew v. Firestone, 421 So.2d 151, 154-55 (Fla.1982). This is so that the voter will have notice of the issue contained in the amendment, will not be misled as to its purpose, and can cast an intelligent and informed ballot. Id. at 155. However, "it is not necessary to explain every ramification of a proposed amendment, only the chief purpose." Carroll v. Firestone, 497 So.2d 1204, 1206 (Fla.1986)
Save Our Everglades, 636 So.2d at 1341; see also Ltd. Casinos, 644 So.2d at 74. Specifically, in conducting its inquiry into the validity of a proposed amendment under section 101.161(1), the Court asks two questions. First, the Court asks whether "the ballot title and summary ... fairly inform the voter of the chief purpose of the amendment." Right to Treatment and Rehabilitation for Non-Violent Drug Offenses, 818 So.2d at 497. Second, the Court asks "whether the language of the title and summary, as written, misleads the public." Advisory Op. to Att'y Gen. re *652 Right of Citizens to Choose Health Care Providers, 705 So.2d 563, 566 (Fla.1998). As we explain below, this ballot summary does not fulfill the statutory requirements.
The proposed ballot summary in this case states: "This amendment provides property tax relief to Florida home owners by increasing the homestead exemption on property assessments by an additional $25,000." Although the amendment's chief purpose is to provide an additional homestead exemption for some homeowners, that is not what the ballot summary says. The summary states that the amendment "provides property tax relief" to all Florida homeowners by increasing the homestead tax exemption. Whether the amendment would ultimately result in "tax relief," however, depends on a variety of factors independent of the amendment.
The Florida Constitution both authorizes local taxing authorities to levy ad valorem property taxes and limits the percentage of property values they may tax. See Art. VII, § 9, Fla. Const.[3] The constitution establishes a cap of ten mills for counties, municipalities, and school districts. Id.[4]
The amount a homeowner pays in property tax, therefore, is a function of two factors: the assessed value of the property and the millage rate applied to the property. This amendment affects only the first factor: the property's valuation. It does not, as we stated above, affect a taxing authority's power to determine the millage rate. Local government entities that have not reached the constitutional ten mill cap may still raise millage rates to account for the decreased revenue resulting from this amendment. See § 200.065, Fla. Stat. (2003) (providing taxing authorities the power to adopt "rolled back rate" to provide the same ad valorem tax revenues as the prior year).
Many local taxing authorities remain under the constitutional millage cap. For example, only fifteen counties currently are at the cap of ten mills.[5] That leaves fifty-two countiesthe vast majoritythe option of increasing the millage rate to account for the proposed homestead exemption. Therefore, even if this amendment is passed, "tax relief" is far from a fait accompli.
*653 Of course, whether any local taxing authorities will raise millage rates in response to the amendment is not the issue. As counsel stated at oral argument, an increase in the millage rate is entirely speculative. Equally speculative is that authorities will not raise the rates. We simply do not know one way or the other. Yet the summary states that the amendment will "provide[ ] property tax relief." The fact that the power to raise rates belongs to the local taxing authorities, however, and that this amendment does not affect that power renders the ballot summary misleading.
Our determination in a prior case that a ballot summary was misleading led us to strike from the ballot an amendment that addressed the taxation of property. In Advisory Opinion to the Attorney General re People's Property Rights Amendments Providing Compensation for Restricting Real Property Use May Cover Multiple Subjects, 699 So.2d 1304, 1309 (Fla.1997), the ballot summary of one of the three amendments we considered stated only that the proposed amendment required voter approval of new taxes and that "[n]ew taxes include[d] the initiation of new taxes, increases in tax rates and eliminating tax exemptions." Id. We found this statement to be fatally inaccurate because the summary did not differentiate between two related but not synonymous terms the amount of taxes paid on property and the rate of taxation. Id. at 1311. Further, we found the absence of a "more complete" definition for "exemption" to be misleading "because the voting public would not readily understand the distinction between an exemption and immunity from taxation." Id. The ballot summary in this case is similarly flawed. The proposed tax exemption affects the valuation of property, but it does not necessarily affect the amount of money to be paid. That is, the amendment does not "provide property tax relief" because it does not affect the rate of taxation and the power of local government entities to set that rate.
We have previously stated that the "ballot summary should tell the voter the legal effect of the amendment, and no more." Evans v. Firestone, 457 So.2d 1351, 1355 (Fla.1984). This summary flies under false colors with a promise of "tax relief." See Askew, 421 So.2d at 156 ("A proposed amendment cannot fly under false colors...."). The use of the phrase "provides property tax relief" clearly constitutes political rhetoric that invites an emotional response from the voter by materially misstating the substance of the amendment. See In re Advisory Op. to the Att'y Gen.Save Our Everglades, 636 So.2d 1336, 1341-42 (Fla.1994) (finding "emotional language" of ballot title and summary to be misleading as it resembled "political rhetoric" more than "accurate and informative synopsis"); Evans, 457 So.2d at 1355 (holding ballot summary defective in part because phrase "thus avoiding unnecessary costs" constituted "editorial comment"). This misleading language does not reflect the true legal effect of the proposed amendment. See Advisory Op. to the Att'y Gen. re Tax Limitation, 644 So.2d 486, 490 (Fla.1994) (stating that the ballot summary must be accurate and informative and "objective and free from political rhetoric").
The citizen initiative constitutional amendment process relies on an accurate, objective ballot summary for its legitimacy. Voters deciding whether to approve a proposed amendment to our constitution never see the actual text of the proposed amendment. See § 101.161(1), Fla. Stat. They vote based only on the ballot title and the summary. Therefore, an accurate, objective, and neutral summary of the proposed amendment is the sine qua non of the citizen-driven process of amending our *654 constitution. Without it, the constitution becomes not a safe harbor for protecting all the residents of Florida, but the den of special interest groups seeking to impose their own narrow agendas.

V. CONCLUSION
We caution that our opinion today is limited to the above issues and must not be construed in any way as a ruling on the underlying merits or wisdom of the amendment. Based on the foregoing analysis, therefore, we hold that the present initiative petition complies with the single-subject requirement of article XI, section 3, Florida Constitution. The ballot summary in this case, however, is misleading and does not comply with the requirements of section 101.161(1), Florida Statutes (2003). Accordingly, we strike the proposal from the ballot.
It is so ordered.
PARIENTE, C.J., and WELLS and CANTERO, JJ., concur.
BELL, J., concurs specially with an opinion, in which PARIENTE, C.J., concurs.
QUINCE, J., concurs in result only with an opinion, in which BELL, J., concurs.
ANSTEAD, J., dissents.
LEWIS, J., dissents with an opinion.
BELL, J., specially concurring.
I concur with both the majority opinion and Justice Quince's concurring in result only opinion. As the majority states, "[t]he citizen initiative constitutional amendment process relies on an accurate, objective ballot summary for its legitimacy.... [A]n accurate, objective, and neutral summary of the proposed amendment is the sine qua non of the citizen-driven process of amending our constitution." Majority op. at 653-54. Justice Quince describes the inaccuracy of the ballot summary. The ballot summary fails to inform voters that the proposed amendment is limited to one of two classes of homeowners. And, as the majority opinion discloses, the ballot summary's promise of "tax relief" is not an accurate, objective, and neutral summary. Accordingly, for both reasons, the proposal should be stricken from the ballot.
The irony of this result is difficult to ignore. The deficiencies in this twenty-two-word ballot summary could easily have been avoided by simply submitting the actual amendment itself, which is less than seventy-five words. I would encourage future proponents of proposed amendments where no summary is necessary to carefully consider whether or not it is best to simply submit the amendment itself in lieu of a summary.
PARIENTE, C.J., concurs.
QUINCE, J., concurring in result only.
I agree with the majority that the ballot summary for the proposed amendment is misleading and does not comply with the requirements of section 101.161(1), Florida Statutes (2003). While I agree with the majority that this proposed amendment should not be placed on the ballot, I do so on another ground. I believe the ballot summary is misleading because it fails to inform the voter that not all homeowners will be entitled to this additional homestead exemption. As the majority explains, section 101.161(1), Florida Statutes (2003), requires this Court to consider whether the ballot title and ballot summary fairly inform the voter of the chief purpose of the amendment, and whether the title summary is misleading to the public. Majority op. at 651-52; see also Advisory Op. to Att'y Gen. Re Right of Citizens to Choose Health Care Providers, *655 705 So.2d 563 (Fla.1998) (holding that this Court must determine whether the language of the ballot title and ballot summary misleads the public). The ballot summary in this case violates section 101.161(1) because it misleads voters by failing to inform them that the proposed homestead exemption is not applicable to all homeowners.
Under the current homestead exemption provision, any person who holds the legal or equitable title to real estate and who maintains that real estate as his or her permanent residence, "or another legally or naturally dependent upon the homeowner," is allowed a certain tax exemption. Art. VII, § 6, Fla. Const. (emphasis added); see also Reinish v. Clark, 765 So.2d 197, 205 (Fla. 1st DCA 2000) (holding that even a non-Florida resident can claim a homestead exemption where the property is the permanent residence of another legally or naturally dependent on the non-resident). The proposed amendment provides for an additional exemption. However, the proposed amendment limits the application of the additional exemption to "any person who has the legal or equitable title to real estate and maintains thereon the permanent residence of the owner." Thus, not all homeowners who are eligible for the current homestead exemption are eligible for the proposed additional exemption. The ballot summary does not explain this limitation.
I conclude that the failure of the ballot summary to inform voters that the increased exemption would not apply to all homeowners currently eligible for the homestead exemption renders it clearly and conclusively defective. I would therefore invalidate the proposed amendment on this basis.
BELL, J., concurs.
LEWIS, J., dissenting.
In my view, the title and summary of the citizen's ballot initiative to increase the homestead exemption from $25,000 to $50,000 complies with the dictates of section 101.601(1) to fairly inform the voters in this state of the chief purpose of the proposed amendment, and should be approved for placement on the ballot. The majority's conclusion to the contrary rests on a completely self-generated and self-constructed misapprehension of the plain language of the summary and the practical effect of the proposed amendment. In reaching its conclusion, the majority completely misapplies established principles for determining whether a summary is "misleading" and therefore subject to a denial of a place on the ballot for consideration by all Floridians. For these reasons, as further explained below, I dissent from the majority's decision.
In my view, the error in the decision today stems from the completely flawed logic it employs. As a threshold matter, I disagree with the majority's contention that the chief purpose of the proposed amendment is to "provide an additional homestead exemption for some homeowners." Majority op. at 652. That is simply a restatement of the title of the proposed amendment and a regurgitation of what the proposed amendment will do. The purpose of providing the additional homestead exemption is to afford a measure of tax relief. In fact, I can think of no other reason or purpose to include an additional homestead exemption in the constitution except to provide the citizens of this state with tax relief.
Furthermore, the majority opinion essentially posits that because a homeowner's tax burden depends on the millage rate as well as the property valuation, an amendment which increases the homestead exemption thereby impacting only property *656 valuation subject to taxation misleads the Florida citizen to the extent it promises "tax relief." This position misconstrues the operation of the amendment as clearly expressed in the summary.
The amendment increases the homestead exemption to $50,000 thus allowing Florida homeowners to protect an additional $25,000 of the value of a homestead from taxation. The increased exemption, and concomitant decrease in the base amount upon which the tax is applied would result in lower property taxes than would exist in the absence of the amendment (i.e., "tax relief"). This relief in the form of a greater exemption amount would occur regardless of whether, or how high, the millage rate applied is increased to derive the ultimate property tax. For example, an owner of a home valued at $100,000 subject to a 6 mill property tax will pay $450 in annual property taxes. If the millage rate remains constant, the owner would pay only $300 in property taxes under the proposed amendment. If one were to assume that a homeowner's local taxing authority would increase the millage rate applicable to the property to the constitutional cap of 10 mills, the owner would still reap "tax relief" by operation of the proposed amendment. With a theoretical millage increase to 10 mills, the homeowner would pay $750 in property taxes under the current scheme, but if the amendment were adopted, the tax burden would be reduced to $500.
The proposed amendment would relieve or remove the burden of taxation from an additional $25,000 of property value. In my view this concept is accurately described as "tax relief." Focusing on the dual component nature of the property tax scheme, the majority contends that the summary's stated intent to "provide property tax relief" is misleading because it effectively promises that local authorities will not raise millage rates. See Majority op. at 653. It would be generous to call this argument strainedsophistry is a more apt description. Further, if the proposed amendment had included both the concept of the exemption and also millage rates, the single subject requirement would have then become operative to reject the proposal.
As the majority recognizes, this Court's constitutional mandate is to determine whether the "ballot title and summary ... fairly inform the voter of the chief purpose of the amendment," Advisory Op. to Att'y Gen. re Right to Treatment and Rehabilitation for Non-Violent Drug Offenses, 818 So.2d 491, 497 (Fla.2002), and "whether the language of the title and summary, as written, misleads the public." Advisory Op. to Att'y Gen. re Right of Citizens to Choose Health Care Providers, 705 So.2d 563, 566 (Fla.1998). In rendering this decision, we have recognized that voters are "presumed to have a certain amount of common sense and knowledge." Advisory Op. to Att'y Gen. re Tax Limitation, 673 So.2d 864, 868 (Fla.1996).
The proposed ballot summary at issue here more than satisfies this standard. The ballot is entitled "Additional Homestead Tax Exemption." The ballot summary explains in simple language, "This amendment provides property tax relief to Florida home owners by increasing the homestead exemption on property assessments by an additional $25,000." Thus, in merely 22 words, the summary clearly communicates that the "tax relief" being referred to is an increase in the amount of the homestead exemption. Voters can properly be presumed to know from learning and experience that the taxable value of property is only one and not the only factor in determining the ultimate amount of tax owed. Despite the clear and unambiguous language, the majority concludes *657 that voters will assume the amendment will freeze local millage rates in perpetuity, resulting in a lower total tax bills. This is a conclusion drawn without substance and certainly is not based on the words of the summary. I seriously doubt that the average Florida voter would exhibit the total ignorance concerning the assessment of property taxes or the inability to logically reason necessary to reach such a conclusion.
Importantly, the ballot summary does not indicate that the amendment will provide Florida home owners with a "property tax cut" or "lower property tax rates." That would be misleading. Nor does the summary baldly assert that it will provide "tax relief" without explaining the context in which that relief would be derived. It clearly explains that it provides tax relief by permitting Florida homeowners to protect a greater share of the value of their homes from the basis upon which taxes are assessed. That is a true, correct, and complete statement of the amendment's purpose, regardless of whether an individual's property tax rises as a result of some future hypothetical millage rate increase. Any potential for the phrase "tax relief" to mislead results directly and solely from the majority's decision to analyze that phrase in isolation, divorced from the explanation and connection that the intended tax relief will result from an increased homestead exemption.
I believe the majority's reliance on this Court's decision in Advisory Opinion to the Attorney General re People's Property Rights Amendments, 699 So.2d 1304 (Fla.1997), is misplaced. There, this Court determined that the summary for an initiative involving voter approval for new taxes was misleading. See id. at 1311. The summary at issue read:
Requires voter approval of new state, local or other taxes. New taxes include initiation of new taxes, increases in tax rates and eliminating tax exemptions.
Allows emergency tax increases, lasting up to 12 months, if approved by three-fourths of a taxing entity's governing body.
Id. at 1309. We deemed the summary's definition of "new tax" as "increases in tax rates" misleading because it did not distinguish between an increase in the amount of money paid on taxable property or the actual rate at which the property is being taxed. See id. at 1311. We also determined that the absence of a more complete definition of the term "exemption" was misleading because the voting public would not understand the distinction between exemption and immunity from taxation. See id.
I submit that the considerations factored into our decision in People's Property Rights do not compel a similar conclusion here. The ballot initiative in that case held out the promise that voters, not legislatures or taxing authorities, would make the ultimate decisions regarding whether or when to initiate new or increased taxes. Obviously, such an amendment would place a tremendous amount of authority and responsibility in the hands of the voters. Thus, we were correct in requiring a clear and detailed explanation of the scope of that authority. Such is not the case here. The instant proposal does not represent a fundamental change in the manner and method for assessing taxes in this state. It simply provides for tax relief by virtue of an increase in the homestead exemption. The summary clearly explains the purpose and operation of the proposed amendment.
Furthermore, I believe the majority overreaches in its assessment that the ballot summary at issue "flies under false colors," and that the promised "tax relief" constitutes political rhetoric which improperly *658 invites an emotional response from the voter. See Majority op. at 653. Even a cursory comparison of the ballot initiative proposed in the instant matter to those deemed to involve emotional appeals reveals the softness of the majority's conclusion in this regard.
In Advisory Opinion to the Attorney General re Save our Everglades, 636 So.2d 1336 (Fla.1994), we determined that the emotional language of the ballot title and summary could mislead voters as to the contents of the proposed amendment. The ballot initiative in that case was entitled, "Save Our Everglades," which was an objectively emotional appeal communicating that one of the most beloved resources in this state would be lost without a favorable vote. See id. at 1341. The text of the amendment, by contrast, explained that the purpose of the amendment was to restore the Everglades to their original condition, not to "save" the area from peril. See id. The summary also averred that the sugarcane industry had "polluted the Everglades," without explaining the nature or severity of that pollution. See id. On this basis, we concluded that the summary was a "subjective evaluation of the impact of the proposed amendment as opposed to a summary of the legal effect." Advisory Op. to Att'y Gen. re Protect People from the Health Hazards of Second Hand Smoke, 814 So.2d 415, 420 (Fla.2002) (discussing the decision in Save Our Everglades); see also Evans v. Firestone, 457 So.2d 1351, 1355 (Fla.1984) (determining that language indicating that the summary judgment portion of a proposed amendment was intended to avoid "unnecessary costs" constituted an improper subjective evaluation of special impact).
The present ballot initiative, by contrast, is decidedly devoid of emotional appeal or political rhetoric. The title "Additional Homestead Tax Exemption" could not be more matter-of-factthe proposed amendment provides an additional homestead exemption. The brief summary states the purpose of the amendment (to provide property tax relief), and the means for achieving that purpose (by increasing the homestead exemption on property assessments by an additional $25,000). Under no reasonable construction could this summary be deemed a "subjective evaluation" of the impact of the proposed amendment. See Protect People from the Health Hazards of Second Hand Smoke, 814 So.2d at 420 (determining that the phrases "protecting" people from the "hazards" of second hand smoke did not constitute impermissible political rhetoric); see also Advisory Op. to Att'y Gen. re Casino Authorization, 656 So.2d 466, 469 (Fla.1995) (determining with scant analysis that language indicating that the amendment "prohibits casinos unless approved by the voters" constituted political rhetoric of the type denounced in Save Our Everglades).
While I cannot subscribe to the majority's make-weight analysis and faulty conclusion that the phrase "tax relief" is misleading, I believe the summary's failure to inform voters that the increased homestead exemption would not apply to all property currently eligible for the homestead exemption presents a closer question. The homestead exemption currently applies to two types of property: (1) property upon which the owner maintains his or her permanent residence, and (2) property upon which a legal or natural dependent of the owner maintains a permanent residence. See Art. VII, § 6(a), Fla. Const. The increased homestead exemption would only apply to the owner's permanent residencea fact not mentioned in the summary.
Certainly, in a perfect world, the summary would explain the limited nature of *659 the tax relief available. However, our constitutional mandate in assessing whether or not a ballot initiative should be rejected as misleading does not require or permit us to determine what language would perfect a summary. To the contrary, our review is constrained by the principle that "[i]n order for a court to interfere with the right of the people to vote on a proposed constitutional amendment the record must show that the proposal is clearly and conclusively defective." Askew, 421 So.2d at 154. Common sense would dictate that the majority of Florida voters currently eligible for the homestead exemption claim it on their permanent residence. Additionally, only one homestead exemption can be claimed by any individual or family unit or with respect to any residential unit. See Art. VII, § 6(b), Fla. Const. Thus, the failure of the ballot summary to state that the increased exemption will not apply to property upon which dependents of the owner reside does not, in my view, constitute a clear and conclusive defect that would render the summary misleading in violation of section 101.161(1) of the Florida Statutes.
It is my opinion that instead of evaluating the plain language of the ballot summary in accordance with the applicable standard of review, the majority has placed its thumb on the scales to ensure that the instant initiative does not appear on the ballot in the upcoming election. The majority's decision is out-of-step with the seasoned precedent that has shaped this Court's section 101.161(1) analysis. For these reasons, I dissent from the majority's decision to disapprove placement of the homestead exemption initiative on the ballot. I realize and certainly understand that the negative impact of this amendment upon government operations and services may be expansive and totally undesirable from a view of merit. However, we are now prohibited from factoring merit into our analytical equation. However commendable or vile the idea of this proposed amendment may be, the purpose is certainly clear in its title and summary.
NOTES
[1] The Florida School Boards Association and the Florida Association of District School Superintendents filed a joint brief.
[2] Article X, section 4 exempts certain homestead property from forced sale, judgment, or liens, but of course, that is a different kind of "homestead exemption" than that addressed by the proposed amendment.
[3] An "ad valorem tax" is a tax based upon the assessed value of property. See § 192.001(1), Fla. Stat. (1997). The term "ad valorem tax" is used interchangeably with the term "property tax." See id. Article VII, section 9(b) provides:

(b) Ad valorem taxes, exclusive of taxes levied for the payment of bonds and taxes levied for periods not longer than two years when authorized by vote of the electors who are the owners of freeholds therein not wholly exempt from taxation, shall not be levied in excess of the following millages upon the assessed value of real estate and tangible personal property: for all county purposes, ten mills; for all municipal purposes, ten mills; for all school purposes, ten mills; for water management purposes for the northwest portion of the state lying west of the line between ranges two and three east, 0.05 mill; for water management purposes for the remaining portions of the state, 1.0 mill; and for all other special districts a millage authorized by law approved by vote of the electors who are owners of freeholds therein not wholly exempt from taxation. A county furnishing municipal services may, to the extent authorized by law, levy additional taxes within the limits fixed for municipal purposes.
[4] A "mill" is one-tenth of one cent, Black's Law Dictionary 993 (6th ed.1990), or "one one-thousandth" of a dollar. § 192.001(10), Fla. Stat. (2003).
[5] These are Calhoun, Dixie, Gadsden, Gilchrist, Glades, Hamilton, Holmes, Jefferson, Lafayette, Liberty, Madison, Suwannee, Union, Wakulla, and Washington counties. See Florida Department of Revenue, "2003 Millage by County," in Property Valuations and Tax Data, 177-78 (Dec.2003) (report available at http://www.myflorida.com/dor/property).