CANTERO, J.,
dissenting.
In reviewing the summary of a proposed constitutional amendment for inclusion on the ballot, one of the issues we must consider is “whether the language of the title and summary, as written, misleads the public.” Advisory Op. to Att’y Gen. re Right of Citizens to Choose Health Care Providers, 705 So.2d 563, 566 (Fla.1998). In my opinion, the ballot summary in this case is misleading in two respects and therefore should be stricken from the ballot.
I.
The first sentence of the ballot summary provides; “This amendment creates a Florida minimum wage covering all employees in the state covered by the federal minimum wage.” The summary therefore states that the amendment simply creates a minimum wage in Florida for those employees already covered by the federal minimum wage. The minimum wage scheme detailed in the proposed amendment, however, is actually much broader than the federal scheme because it applies to employees not presently covered by the federal minimum wage.
The amendment itself provides that the terms “Employer,” “Employee” and ‘Wage” “shall have the meanings established under the federal Fair Labor Standards Act (FLSA) and its implementing regulations.” See Proposed Amendment at (b). The FLSA regulates, among other things, the federal minimum wage. See 29 U.S.C.A. §§ 201-219 (1998). The FLSA specifically defines “Employer” and “Employee.” See id. § 203. It also contains a long list of exemptions — categories of employees (as defined) to whom federal minimum wage requirements do not apply. See id. § 213.[4] These are not persons *644 excluded from the definition of “employee;” rather, they are defined “employees” who are not subject to the minimum wage requirements. The proposed amendment does not incorporate these exemptions. Stated differently, the amendment, which borrows the definitions of “Employer,” “Employee” and “Wage” from the FLSA, does not also borrow its exemptions of certain employees. Such federally exempt employees would be entitled to receive the minimum wage in Florida. Voters approving the proposed amendment will unwittingly be voting to extend a new Florida minimum wage to many categories of employees exempt from the federal minimum wage. Yet the ballot summary conveys the idea that the proposed amendment applies only to individuals covered by the federal minimum wage.
The majority attempts to solve this problem by noting that the amendment does not adopt the definitions of “employee” in the FLSA, but the “meaning” of the term “employee,” which the majority proposes is a much broader concept. However broad the term “meaning” is, it is not so expansive as to cover both definitions and exemptions. The majority itself concedes that a “definition” is “the act of stating a precise meaning or significance.” Under the FLSA, “employee” is a defined term. Therefore, the definition of “employee” is its meaning under the FLSA. That the FLSA may exempt from minimum wage requirements certain employees does not change the meaning of the term employee; it changes only the effect of the statute on them.
For these reasons, I would hold that the ballot summary does not meet the requirements of section 101.161(1) and should be denied placement on the ballot.
II.
The second sentence of the ballot summary provides: “The state minimum wage will start at $6.15 per hour six months after enactment, and thereafter be indexed to inflation each year.” This statement, through the use of the word “indexed,” indicates to voters that when inflation is positive, the state minimum wage will increase, and when inflation is negative, it will decrease. The amendment itself, however, provides for something much different.
The proposed amendment provides:
On September 30th of [the] year [of enactment] and on each following September 30th, the state Agency for Workforce Innovation shall calculate an adjusted Minimum Wage rate by increasing the current Minimum Wage rate by the rate of inflation during the twelve months prior to each September 1st using the consumer price index for urban wage earners and clerical workers, CPI-W, or a successor index as calculated by the United States Department of Labor.
(Emphasis added.) Thus, pursuant to the amendment, the new Florida minimum wage could never decrease, even if the United States experiences a period of negative inflation.
As stated in the summary, the proposed amendment clearly contemplates the use of an index. It provides in section (c) that every year “the state Agency for Workforce Innovation shall calculate an adjusted Minimum Wage rate by increasing the current Minimum Wage rate by the rate of *645 inflation during the twelve months prior to each September 1st using the consumer price index for urban wage earners and clerical workers, CPI-W, or a successor index as calculated by the United States Department of Labor ” (emphasis added). The United States Department of Labor publishes the CPI-W. Although the CPI-W certainly shows a historical upward trend, there have been several years — and many months — where the index has shown a negative inflation rate. See U.S. Dep’t of Labor, Bureau of Labor Statistics, Consumer Price Indexes, http:// data.bls.gov/cgi-bin/surveymost?cw. While, as the majority states, a negative inflation rate is also called “deflation,” inflation indexes such as the CPI-W track both upward and downward trends, and the voters will understand an “index” to mean just that. The dictionary defines the verb to “index” as “to regulate (as wages, prices, or interest rates) by indexation,” and it defines “indexation” as “a system of economic control in which certain variables (as wages and interest) are tied to a cost-of-living index so that both rise or fall at the same rate and the detrimental effect of inflation is theoretically eliminated.” See Merrianu-Webster’s Collegiate Dictionary 591 (10th Ed.1994). Therefore, when voters read the phrase, “indexed to inflation each year,” they expect that the minimum wage will rise and fall with the rate of inflation. Voters reading the summary will not interpret the phrase as the majority proposes— as only covering positive inflation.
The consequences of the misleading ballot summary can be seen from the following example:
Year 1: CPI-W = 0 Minimum wage = 100%
Year 2: CPI-W = -2 Minimum wage = 100%
Year 3: CPI-W = +1 Minimum wage = 101%
In this example, inflation drops two percent in Year 2 and increases one percent in Year 3, for a net decrease of one percent over two years. A voter reading the ballot summary would assume that the minimum wage will drop correspondingly-two percent downward in Year 2 and one percent upward in Year 3. Under the actual amendment, however, the minimum wage in Year 2 remains the same, but in Year 3 it increases by one percent. Thus, while the real inflation rate decreased by a net of one percent over two years, the minimum wage increased by a net of one percent over two years. In other words, in Year 3, the actual CPI-W is still one percent below its starting point in Year 1, yet the minimum wage has increased to one point above its starting point in Year 1. A true “index,” as stated in the ballot summary, would allow for both increases and decreases in inflation as reflected in the CPI-W. Because Florida’s minimum wage can never decrease under the proposed amendment, the ballot summary is misleading and I would strike it from the ballot as defective.
III.
We have not hesitated to strike proposed amendments from the ballot where the ballot summary was misleading. For example, in Advisory Opinion to the Attorney General re Additional Homestead Tax Exemption, No. SC04-942, 880 So.2d 646, 2004 WL 1574226 (Fla. July 15, 2004), also decided today, this Court held that the ballot summary was misleading because it promised that the amendment would provide tax relief, yet the amendment actually left unaffected the constitutional authority of local governments to impose taxes. Similarly, in In re Advisory Opinion to the Attorney General—Save our Everglades, 636 So.2d 1336 (Fla.1994), the ballot summary was held to be misleading because it provided that the sugarcane industry “which polluted the Everglades” is “to help to pay to clean up pollution.” Nothing in the text of the amendment, however, indicated that entities other than the sugar *646 cane industry would be sharing the expense of the cleanup. Id. at 1341. See also Advisory Op. to the Att’y Gen. re Fish and Wildlife Conservation Comm’n, 705 So.2d 1351 (Fla.1998) (ballot summary did not meet the requirements of section 101.161 in part because it did not adequately inform voters that the amendment forming the new commission would strip the legislature of its exclusive power to regulate marine life); Advisory Op. to the Att’y Gen. re Stop Early Release of Prisoners, 642 So.2d 724 (Fla.1994) (ballot summary held to be defective because it failed to state that the summary’s promise that state prisoners will serve at least 85% of their sentences did not apply in cases of pardon and clemency).
The necessity of striking proposed amendments from the ballot based on misleading summary language is based on the central fact that voters read only the summary when deciding whether to approve an amendment. As we emphasize today in In re Additional Homestead Tax Exemption,
The citizen initiative constitutional amendment process relies on an accurate, objective ballot summary for its legitimacy. Voters deciding whether to approve a proposed amendment to our constitution never see the actual text of the proposed amendment. See § 101.161(1), Fla. Stat. They vote based only on the ballot title and the summary. Therefore, an accurate, objective, and neutral summary of the proposed amendment is the sine qua non of the citizen-driven process of amending our constitution. Without it, the constitution becomes not a safe harbor for protecting all the residents of Florida, but the den of special interest groups seeking to impose their own narrow agendas.
Advisory Op. to the Att’y Gen. re Additional Homestead Tax Exemption, No. SC04-942, 880 So.2d at 653-54. An accurate summary is all the more important because, by placing the summary on the ballot, the state places its imprimatur on it. Voters trust the state to accurately describe the propositions on which they are to vote.
The ballot summary in this case is not an accurate, objective, and neutral summary of the proposed amendment. It misleads the voters by (1) stating that the amendment simply creates a minimum wage in Florida for those employees already covered by the federal minimum wage, when it actually covers a much broader spectrum of employees; and (2) stating that the minimum wage will be “indexed to inflation” when it actually can only increase with positive inflation. Because I believe that an accurate, objective, and neutral summary is absolutely essential to a fair and democratic citizen initiative constitutional amendment process, I would strike the proposed amendment from the ballot.

. This list includes (a) those employed in an executive, administrative, or professional capacity; (b) those employed by an amusement or recreational establishment, organized camp, or religious or non-profit educational conference center (subject to other limitations); (c) those employed in the catching, taking, propagating, harvesting, cultivating, or farming of aquatic forms of animal and vegetable life, or in the first processing, canning or packing of such marine products at sea as an incident to such fishing operations; (d) those employed in agriculture (subject to other limitations); (e) those employed by certain newspaper publishers; (f) switchboard operators employed by certain public telephone companies; (g) seamen on certain vessels; (h) those employed on a casual basis in domestic service employment for babysitting services or in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves; (i) certain criminal investigators; (j) criminal systems *644 analysts, computer programmers, software engineers, or other similarly skilled workers (subject to other limitations); (k) newspaper carriers (subject to other limitations); and (1) those employed in certain employment in retail and service establishments (subject to other limitations).